## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

STEVEN LOWE and
SIOBHAN LOWE;

    Plaintiffs,

v.

DIFEI TRANSPORT LLC
and ARMAS ARMELIO;

    Defendants.

CIVIL ACTION

FILE NO. 1:20-cv-05224-CAP

_____

## <u>CONSOLIDATED PRETRIAL ORDER</u>

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION; Civil Action No. 1:20-cv-05224-CAP. Conference is requested.

1.

There are no motions or other maters pending for consideration by the court except as noted:

**Defendants' Motion to Exclude Testimony of Dr. Adams [64] filed on January 28, 2022 remains pending before the Court, as well as Defendants' Motion to Compel and Sanctions [71] filed on February 2022.  No other motions are currently pending before the Court.**

1

2.

All discovery has been completed, unless otherwise noted, and the court will not consider any further motions to compel discovery. (Refer to LR 37.1B). Provided there is no resulting delay in readiness for trial, the parties shall, however, be permitted to take the depositions of any persons for the preservation of evidence and for use at trial.

**Defendants' Motion to Compel and Sanctions [71] concerning non-party discovery filed on February 2022 remains pending before the Court.**

**Plaintiff is not seeking lost wages, medical bills or any other item of economic damages in this case. As such , Defendants' Motion to Compel and Sanctions [71], which seeks discovery related to medical billing and reductions of such billing,   should be denied as moot.**

3.

Unless otherwise noted, the names of the parties as shown in the caption to this Order and the capacity in which they appear are correct and complete, and there is no question by any party as to the misjoinder or non-joinder of any parties.

**The parties agree that the case caption is correct, and no misjoinder or non-joinder issues exist in this matter.**

4.

Unless otherwise noted, there is no question as to the jurisdiction of the court; jurisdiction is based upon the following code sections. (When there are multiple claims, list each claim and its jurisdictional basis separately.)

**Jurisdiction in this matter is based on 28 U.S.C § 1446 (d) and <u>28 U.S.C § 1332</u>.  The parties stipulate that jurisdiction and venue are proper.**

5.

The following individually-named attorneys are hereby designated as lead counsel for the parties:

<u>Plaintiffs</u>:        R. SEAN MCEVOY, ESQ
               WLG ATLANTA, LLC
               BANK OF AMERICA PLAZA
               600 PEACHTREE STREET NE, SUITE 4010
               ATLANTA, GA 30308
               TELEPHONE: (470) 480-7540
               E-MAIL: SEAN.MCEVOY@WITHERITELAW.COM

<u>Defendants</u>:       Scott W. McMickle, Esq.
               McMickle, Kurey & Branch, LLP
               217 Roswell Street
               Alpharetta, GA 30009
               Phone: (678) 824-7810
               Email: swm@mkblawfirm.com

6.

Normally, the Plaintiffs are entitled to open and close arguments to the jury. (Refer to LR39.3(B)(2)(b)). State below the reasons, if any, why the Plaintiffs should not be permitted to open arguments to the jury.

**The parties stipulate that Plaintiff is entitled to open and close arguments in this case.**

7.

The captioned case shall be tried to a jury.

8.

State whether the parties request that the trial to a jury be bifurcated, i.e. that the same jury consider separately issues such as liability and damages. State briefly the reasons why trial should or should not be bifurcated.

**The parties are not requesting bifurcation of this trial.**

9.

Attached hereto as Attachment "A" and made a part of this order by reference are the questions which the parties request that the court propound to the jurors concerning their legal qualifications to serve.

10.

Attached hereto as Attachment "B-1" are the general questions which plaintiff wishes to be propounded to the jurors on voir dire examination.

4

Attached hereto as Attachment "B-2" are the general questions which defendant wishes to be propounded to the jurors on voir dire examination.

Attached hereto as Attachment "B-3", "B-4", etc. are the general questions which the remaining parties, if any, wish to be propounded to the jurors on voir dire examination.

The court, shall question the prospective jurors as to their address and occupation and as to the occupation of a spouse, if any. Counsel may be permitted to ask follow-up questions on these matters. It shall not, therefore, be necessary for counsel to submit questions regarding these matters. The determination of whether the judge or counsel will propound general voir dire questions is a matter of courtroom policy which shall be established by each judge.

11.

State any objections to Plaintiffs' voir dire questions:

**Defendants' objections are attached to Exhibit B.**

State any objections to Defendants' voir dire questions:

**Plaintiffs' objections are attached to Exhibit B-2.**

12.

All civil cases to be tried wholly or in part by jury shall be tried before a jury consisting of not less than six (6) members, unless the parties stipulate otherwise. The parties must state in the space provided below the basis for any requests for

additional strikes. Unless otherwise directed herein, each side as a group will be allowed the number of peremptory challenges as provided by 28 U.S.C. § 1870. See Fed.R.Civ.P. 47(b).

**The parties' consent to the above and do not believe additional strikes are necessary unless the Court seats more than six (6) jurors.**

13.

State whether there is any pending related litigation. Describe briefly, including style and civil action number.

**No pending related litigation exists.**

14.

Attached hereto as Attachment "C" is Plaintiffs' outline of the case which includes a succinct factual summary of Plaintiffs' cause of action and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law creating a specific legal duty relied upon by plaintiff shall be listed under a separate heading. In negligence cases, each and every act of negligence relied upon shall be separately listed. For each item of damage claimed, plaintiff shall separately provide the following information: (a) a brief description of the item claimed, for example, pain and suffering; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision

authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

15.

Attached hereto as Attachment "D" is the Defendants' Statement of the Case.

16.

Attached hereto as Attachment "E" are the facts stipulated by the parties. No further evidence will be required as to the facts contained in the stipulation and the stipulation may be read into evidence at the beginning of the trial or at such other time as is appropriate in the trial of the case. It is the duty of counsel to cooperate fully with each other to identify all undisputed facts. A refusal to do so may result in the imposition of sanctions upon the noncooperating counsel.

17.

The legal issues to be tried are as follows:

**(a) proximate cause**

**(b) Plaintiff Steven Lowe's non-economic damages for pain and suffering**

**c) Plaintiff Siobhan Lowe's non-economic damages for loss of consortium and services of her husband Steven Lowe.**

18.

Attached hereto as Attachment "F-1" for the Plaintiffs, Attachment "F-2" for the Defendants is a list of all the witnesses and their addresses for each party. The list must designate the witnesses whom the party will have present at trial and those witnesses whom the party may have present at trial. Expert (any witness who might express an opinion under Rule 702), impeachment and rebuttal witnesses whose use as a witness can be reasonably anticipated must be included. Each party shall also attach to the list a reasonable specific summary of the expected testimony of each expert witness.

All of the other parties may rely upon a representation by a designated party that a witness will be present unless notice to the contrary is given ten (10) days prior to trial to allow the other party(s) to subpoena the witness or to obtain the witness' testimony by other means. Witnesses who are not included on the witness list (including expert, impeachment and rebuttal witnesses whose use should have been reasonably anticipated) will not be permitted to testify, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

19.

Attached hereto as Attachment "G-1" for the Plaintiffs, "G-2" for the Defendants are the typed lists of all documentary and physical evidence that will

be tendered at trial. Learned treatises which are expected to be used at trial shall not be admitted as exhibits. Counsel are required, however, to identify all such treatises under a separate heading on the party's exhibit list.

Each party's exhibits shall be numbered serially, beginning with 1, and without the inclusion of any alphabetical or numerical subparts. Adequate space must be left on the left margin of each party's exhibit list for court stamping purposes. A courtesy copy of each party's list must be submitted for use by the judge.

Prior to trial, counsel shall mark the exhibits as numbered on the attached lists by affixing numbered yellow stickers to Plaintiffs' exhibits, numbered blue stickers to Defendants' exhibits, and numbered white stickers to joint exhibits. When there are multiple Plaintiffs or Defendants, the surname of the particular Plaintiff or Defendant shall be shown above the number on the stickers for that party's exhibits.

Specific objections to another party's exhibits must be typed on a separate page and must be attached to the exhibit list of the party against whom the objections are raised. Objections as to authenticity, privilege, competency, and, to the extent possible, relevancy of the exhibits shall be included. Any listed document to which an objection is not raised shall be deemed to have been

stipulated as to authenticity by the parties and shall be admitted at trial without further proof of authenticity.

Unless otherwise noted, copies rather than originals of documentary evidence may be used at trial. Documentary or physical exhibits may not be submitted by counsel after filing of the pretrial order, except upon consent of all the parties or permission of the court. Exhibits so admitted must be numbered, inspected by counsel, and marked with stickers prior to trial.

Counsel shall familiarize themselves with all exhibits (and the numbering thereof) prior to trial. Counsel will not be afforded time during trial to examine exhibits that are or should have been listed.

**Subject to the Court's approval, the parties agree to a physical exchange of exhibits no later than thirty (30) days before the pretrial conference. The parties have done their best to include all anticipated exhibits in their current exhibit lists. However, the parties agree that they may amend their list of exhibits until thirty (30) days before the pretrial conference.**

20.

The following designated portions of the testimony of the persons listed below may be introduced by deposition:

**The parties agree to submit deposition designations to each other in writing no later than twenty-one (21) days prior, to the date on which the**

pretrial conference is scheduled. Any objections to the designated portions of any depositions shall be made in writing no later than fourteen (14) days prior to the date, on which the pretrial conference is scheduled. The parties shall confer with each other before the pretrial conference regarding their designations and objections.

**FOR PLAINTIFFS:**

Pursuant to Fed.R.Civ.P. 32(a)(3), Plaintiffs reserve the right to use any portion of the depositions of Defendants DIFEI TRANSPORT LLC and ARMAS MR. ARMELIO at trial.

Pursuant to Fed. R. Civ. P. 32, Plaintiffs intend to introduce excerpts from the videotaped depositions of the following witnesses:

a)   Plaintiff's treating physician, Dr. Bryan Adams, whose deposition was taken on October 1, 2021. Plaintiff designates pages 8:20 – 48:2; 48:7 – 56:6; 56:22 – 61:2; and 103:1 – 113:3.

b)   Plaintiff's treating physician, Dr. Onika Popo-James, whose deposition was taken on September 14, 2021.  Plaintiff designates pages 5:22 – 10:19; 11:5 – 11:18; 12:6 – 19:4; 20:3 – 21:10; 21:16 – 22:2; 22:6 – 24:17; 25:7 – 34:20; 34:23 – 35:7; and 35:9 – 37:22.

c)   Lee Drake, SLG Sports & Marketing, LLC corporate representative, whose deposition was taken on November 18,

**2021.  Plaintiff designates pages 5:17 -23; 7:12 – 43:20; and 44:5 – 44:13.**

Plaintiffs reserve the right to use the deposition of any witness for impeachment purposes.

Plaintiffs reserve the right to object to Defendants' deposition designations.

**<u>FOR DEFENDANTS</u>:**

**Defendants will provide deposition designations in accordance with the deadlines provided above.**

**Defendants reserve the right to file objections to all deposition designations in accordance with the deadlines provided above.**

Any objections to the depositions of the foregoing persons or to any questions or answers in the depositions shall be filed in writing no later than the day the case is first scheduled for trial. Objections not perfected in this manner will be deemed waived or abandoned. All depositions shall be reviewed by counsel and all extraneous and unnecessary matter, including non-essential colloquy of counsel, shall be deleted. Depositions, whether preserved by stenographic means or videotape, shall not go out with the jury.

21.

Attached hereto as Attachments "H-1" for the Plaintiffs, "H-2" for the

Defendants are any trial briefs which counsel may wish to file containing citations

to legal authority concerning evidentiary questions and any other legal issues

which counsel anticipate will arise during the trial of the case. Limitations, if any,

regarding the format and length of trial briefs is a matter of individual practice

which shall be established by each judge.

22.

In the event this is a case designated for trial to the court with a jury,

requests for charge must be submitted no later than 9:30 a.m. on the date on which

the case is calendared (or specially set) for trial. Requests which are not timely

filed and which are not otherwise in compliance with LR 51.1, will not be

considered. In addition, each party should attach to the requests to charge a short

(not more than one (1) page) statement of that party's contentions, covering both

claims and defenses, which the court may use in its charge to the jury.

23.

If counsel desire for the case to be submitted to the jury in a manner other

than upon a general verdict, the form of submission agreed to by all counsel shall

be shown in Attachment "I" to this Pretrial Order. If counsel cannot agree on a

special form of submission, parties will propose their separate forms for the
consideration of the court.

24.

Unless otherwise authorized by the court, arguments in all jury cases shall be
limited to one-half hour for each side. Should any party desire any additional time
for argument, the request should be noted (and explained) herein.

25.

If the case is designated for trial to the court without a jury, counsel are
directed to submit proposed finding of fact and conclusions of law not later than
the opening of trial.

**Not applicable.**

26.

Pursuant to LR 16.3, lead counsel and persons possessing settlement
authority to bind the parties met virtually on _____, to discuss in good faith
the possibility of settlement of this case. **The parties have not yet participated in
a mediation.**  The court has not discussed settlement of this case with counsel. It
appears at this time that there is:

(_____) A good possibility of settlement.

(__X__) Some possibility of settlement.

(_____) Little possibility of settlement.

14

(_____) No possibility of settlement.

27.

Unless otherwise noted, the court will not consider this case for a special

setting, and it will be scheduled by the clerk in accordance with the normal practice

of the court.

**The parties do not request a special setting.**

28.

The Plaintiffs estimate that it will require one (1) day to present its evidence.

The Defendants estimate that it will require (1) day to present its evidence. It is

estimated that the total trial time is (2) days.

29.

**IT IS HEREBY ORDERED** that the above constitutes the pretrial order for

the above captioned case (_____) submitted by stipulation of the parties or

(__X__) approved by the court after conference with the parties.

**IT IS FURTHER ORDERED** that the foregoing, including the attachments

thereto, constitutes the pretrial order in the above case and that it supersedes the

pleadings which are hereby amended to conform hereto and that this pretrial order

shall not be amended except by Order of the court to prevent manifest injustice.

Any attempt to reserve a right to amend or add to any part of the pretrial order after

the pretrial order has been filed shall be invalid and of no effect and shall not be

binding upon any party or the court, unless specifically authorized in writing by the court.

**IT IS SO ORDERED** this _____ day of _____, 2022.

_____
HONORABLE CHARLES A. PANNELL, JR.
UNITED STATES DISTRICT JUDGE

Each of the undersigned counsel for the parties hereby consents to entry of the foregoing pretrial order, which has been prepared in accordance with the form pretrial order adopted by this court.

WLG ATLANTA, LLC

*/s/ R. Sean McEvoy*
R. SEAN MCEVOY ESQ.
GEORGIA BAR NO. 490918
ATTORNEY FOR PLAINTIFFS

600 PEACHTREE STREET NE, SUITE 4010
ATLANTA, GA 30308
TELEPHONE: 470-480-7540
FACSIMILE:  470-880-5088
E-MAIL:    SEAN.MCEVOY@WITHERITELAW.COM

MCMICKLE, KUREY AND BRANCH, LLP
*Matthew R. Sessions, Esq.*
*signed with express permission*
GEORGIA BAR NO.  899806
ATTORNEY FOR DEFENDANTS

217 Roswell Street, Suite 200
Alpharetta, GA 30009
TELEPHONE (678) 824-7800
FACSIMILE: (678) 824-7801
E-MAIL:swm@mkblawfirm.com
E-MAIL: msessions@mkblawfirm.com

16

## <u>CERTIFICATE OF COMPLIANCE WITH N.D.GA. LOCAL RULE 5.1B</u>

This is to certify that this pleading was created in Times New Roman 14-point font in accordance with Northern District of Georgia Local Rule 5.1B.

This 10th day of March 2022.

WLG ATLANTA, LLC

*/s/ R. Sean McEvoy*
R. SEAN MCEVOY ESQ.
GEORGIA BAR NO. 490918
ATTORNEY FOR PLAINTIFFS

600 PEACHTREE STREET NE, SUITE 4010
ATLANTA, GA 30308
TELEPHONE: 470-480-7540
E-MAIL:     SEAN.MCEVOY@WITHERITELAW.COM

17

## EXHIBIT A

Pursuant to Judge Pannell's Case Instructions Order, the panel will be asked certain qualifying questions and the jurors will be asked to verbally respond to a printed questionnaire (containing general questions regarding their residence, occupation, education, recreational activities, prior jury service, and children, if applicable).

The parties jointly propose the following qualifying questions:

1.      Is anyone related to, by blood or marriage, to the Plaintiffs in this case: STEVEN LOWE or his wife, SIOBHAN LOWE?

2.      Is anyone related to, by blood or marriage, to the Defendant in this case: ARMAS ARMELIO

3.      Does anyone have any ownership interest or business relationships with the Defendant in this case: and DIFEI TRANSPORT LLC.

4.      Does any member of the panel know the attorney for the Plaintiff: Sean McEvoy?

5.      Does any member of the panel know any employees of, or has any member of the panel or their immediate family worked for or been represented by WLG Atlanta, LLC?

6.      Does any member of the panel know the defense attorneys for the Defendants: Scott McMickle or Matthew Sessions?

7.     Does any member of the panel know any employees of, or has any member of the panel or their immediate family worked for or been represented by McMickle Kurey & Branch, LLC?

8.     Does anyone know any of the following individuals who may be witnesses in this case?

    a.  Dr. Popo-Jones

    b.  Dr. Brian Adams

    c.  Dr. Keith Osborn

    d.  Susan Garrison

    e.  Henry County Police Officer M. Smith

    f.  Michael Scott, who witnessed the subject collision.

    g.  Lee Kelly

    h.  Alando Wilson

    i.  Janelle Wilson

    j.  Shannon Yates

    k.  Rochelle McLauglin

9.     Does anyone believe you know anything about this case or that you have heard anything about this case before coming into court today?

10.     Does any juror hold any belief, religious or otherwise, which discourages or prevents jury service?

19

11.　　Is there any member of the panel who has any special disability or problem that would make serving as a member of this jury difficult or impossible?

12.　　Is there anyone who is not a citizen of the United States?

13.　　Is there anyone here who is not at least eighteen years of age?

**Plaintiffs'** additional proposed qualifying questions are included below:

**None.**

**Defendants'** additional proposed qualifying questions are included below:

**None.**

**EXHIBIT B-1**

**PLAINTIFF'S PROPOSED VOIR DIRE QUESTIONS**

1.  I want to tell you all a little about this case to make sure that no one has ever heard of this case before. This is a lawsuit filed by Steve Lowe and his wife, Siobhan Lowe.  Mr. Lowe is seeking to recover non-economic damages for pain and suffering, sometimes called human damages.

    a.  The collision occurred on June 26, 2019 on I-75 northbound at or near the intersection of Jodeco Road at approximately 5:35 a.m. Plaintiff Steven Lowe was driving his car in the far right lane of I-75.  The Defendants' tractor-trailer was in the next lane over to the right. Defendant ARMELIO changed lanes and struck Plaintiff Steven Lowe's vehicle, causing Mr. Lowe to lose control of and swerve in his vehicle. The force of the hit caused by Defendant ARMELIO's tractor-trailer caused Mr. Lowe's vehicle to swerve off the roadway, through a ditch and up an embankment, where it came to rest some distance from the roadway. The collision and aftermath caused disabling damage to Mr. Lowe's vehicle. Mr. Lowe is claiming that he was injured because of the collision.

    Is there anyone here who has heard about this collision or this lawsuit?

2.     This is a civil lawsuit. This means the Plaintiff has the burden of proof to prove their case by a preponderance of the evidence. This is just a fancy way of saying they have to show that they are more likely than not correct. This is not a criminal case where the prosecution has to prove the case beyond a reasonable doubt, which is a much higher standard. In this case the Plaintiffs' only have to show that they are probably correct. Does anyone think that this reduced burden of proof in a civil case is unfair?

3.     How many people on this panel are concerned about the safety of trucks driving on our highways and public roadways here in Georgia?

4.     How many people on this panel have had a bad experience with a truck while driving on a public roadway?

5.     Under the law of the State of Georgia, when a person is injured in a collision caused by a truck driver, the truck driver and his or her employer are responsible to pay for all damages caused by the collision. Who here thinks that is unfair?

6.     Who here has strong feelings about frivolous lawsuits and that there are too many lawsuits filed in our country?

7.     Who here thinks that a person or company that cause a collision that injures someone else should take responsibility for their actions even if

that means admitting they are responsible to pay money damages in a personal injury lawsuit?

8.   Who here thinks that when a company admits to causing a collision, that company should get a discount and not have to pay full and complete damages caused to the injured person?

9.   We talked about frivolous lawsuits. What about frivolous defenses. Who here thinks that it is inappropriate for an individual or a company to assert frivolous defenses in a lawsuit simply to prolong having to pay money damages and make it harder for the injured person to recover their damages?

10.  How many people on the panel think that if a person wants to seek money damages for injuries, they suffered in a motor vehicle collision caused by someone else that they have to have been in perfect health before the collision with no prior similar injuries or medical issues?

11.  The law recognizes that it would be unfair to require everyone to be in perfect health in order to recover damages because the truth is that we all have some sort of medical and/or injury history. As a result, there is a concept in the law called the eggshell plaintiff rule. Essentially what this means is that if a person is more susceptible to an injury because of a prior medical condition or injury, a defendant who causes a crash and

23

aggravates or exacerbates that injury is responsible for the aggravation. How many people think that this is fair and appropriate?

12. Under the law of the State of Georgia, when a person is injured due to the alleged negligence of another, their only recourse is to file a lawsuit for money damages. That means that as a juror the only thing that you can do in this case, if you find Defendants were more likely than not responsible for the injuries and damages claimed by the Plaintiffs is to award money to them. That means the only reason we are here is money. Does anybody have a problem with that?  Or a problem with Mr. and Mrs. Lowe coming to this courthouse and seeking money damages?

13. Mr. and Mrs. Lowe will be presenting evidence in this case that Mr. Lowe has incurred significant damages in this case and that Mrs. Lowe also suffered damages for the loss of consortium and services of her husband, Steven Lowe.   As a result of these losses and damages, Mr. and Mrs. Lowe's attorney will be asking the jury to issue a large verdict in this case.  Is there anyone here who would have a problem with returning a verdict of four million ($4,000,000.00) dollars, if the evidence shows that the losses and damages in this case are worth that much?

14. Does anyone have experience past or present working for a trucking company, motor carrier, or other job in the trucking industry or have a

family member or friend who works for a trucking company, motor carrier, or has another position in the trucking industry?

15. Is there anyone on the panel who currently has a commercial driver's license or who has had one in the past or do you have a family member or friend who has a commercial driver's license or had one in the past?

16. Has anyone on the panel ever rented a box truck or other commercial type vehicle from a place like U-Haul or Home Depot or Penske or otherwise driven a commercial motor vehicle? For those who answered yes, did you come to the conclusion that driving a larger commercial vehicle is not like driving a car?

17. Is anyone on the panel the owner of a small business?

18. Is there anyone here who has negative feelings towards a person who would bring a personal injury lawsuit for money damages?

19. Do any of you know each other? If so, how?

20. Who among you has education or work experience in the following fields:

    a.    Law enforcement

    b.    Roadway accident investigation or reconstruction

    c.    Law

    d.    Medicine, nursing, or hospice care

e.    Insurance claims or adjusting

f.    Accounting or actuarial sciences

g.    Evaluating the value of personal injuries or a human life

Please explain.

21.    Has anyone here served in the military? If so, what branch and when did you serve?

22.    Who here has been in a car accident or had a family member in a car accident where someone was injured?

a.  If so, please tell us about the accident and the injuries and whether you or your family member made a claim or filed a lawsuit or if someone else did?

23.    Has anyone been a plaintiff in a personal injury lawsuit? Explain.

24.    Has anyone been a defendant in a personal injury lawsuit? Explain.

25.    How many people here have or knows someone who has had a medical procedure called epidural steroid injections in their spine? Tell us about that.

26.    How many people here have or knows someone who has had a medical procedure called facet joint injections in their spine? Tell us about that.

27.    How many people here have or knows someone who has had a medical procedure called radiofrequency ablation or nerve burn surgery where the

26

nerves coming out of the spine are temporarily burned/numbed? Tell us about that.

28.   How many people here have or knows someone who has had a medical procedure called a spinal cord stimulator implant surgery in their spine? Tell us about that.

29.   In a case like this one, the law allows the Plaintiff to ask for certain categories of damages and the jury will be asked to place a monetary value on each of these damages. Does anyone here have any problem or concern about awarding monetary damages for any of the following:

    a.  interference with normal living,

    b.  interference with enjoyment of life,

    c.  loss of capacity to labor and earn money,

    d.  impairment of bodily health and vigor,

    e.  the fear of extent of injury,

    f.  shock of impact,

    g.  actual pain and suffering (past and future), and

    h.  past and future mental anguish.

30.   The Defendants in this case are both from Miami, Florida. Is there anyone here who would have a hard time being fair to both sides

knowing that Mr. and Mrs. Lowe live here in the metro Atlanta area, while the Defendants are located in Miami, Florida?

31. Who has ever had a bad experience with the jury or legal system?

    a.    If so, please tell us about your experience.

32. Who here has served on a civil jury in the past? If so:

    a.    Was it a criminal or civil case?

    b.    What court were you in?

    c.    When?

    d.    Were you able to reach a verdict?

    e.    Were you the Foreperson?

33. Does anyone think that they cannot be fair to all sides in this case for any reason?

34. Does anybody have a reason that they don't think they can serve on a jury in this case that is private and that you want to share with us in private?

## <u>Defendants' Objections to Plaintiffs' Voir Dire Questions</u>

Defendants object to Plaintiffs' additional proposed qualifying question No. Nine. Plaintiff has not alleged a claim for frivolous defenses and to imply otherwise during voir dire would improperly prejudice Defendants.

Defendants also object to Questions 25-28. Plaintiff's post-accident medical treatment is not relevant and is more prejudicial to Defendants than probative of Plaintiff's claims for pain and suffering in light of Plaintiff's decision to abandon all special damages. Plaintiff should not be allowed to create inferences that he underwent those procedures or that the Defendants caused the need for treatment.

## EXHIBIT B-2

## DEFENDANTS' PROPOSED GENERAL VOIR DIRE QUESTIONS

1. Are any of you employed by, represented by, or under the medical care of any of the following entities:

   a. Witherite Law Group doing business as "1-800-TruckWreck"

   b. Spine Center Atlanta

2. Who here has seen the ads on TV or heard ads on radio stations like V103 for "1-800-TruckWreck"?

3. Is there anyone here who thinks it is inappropriate for law firms to advertise to get clients?

4. Is there anyone here who believes that sometimes car wreck victims can overstate their injuries to help their lawsuit?

5. Is there anyone here who would be unable to render a fair verdict if you found out that the doctors who gave the plaintiff treatment were in a referral relationship with the lawyers?

6. This case involves medical treatment provided by doctors on a medical lien, which means the doctors have a financial interest in the outcome of this case. Have any of you ever received treatment from a "lien doctor" or on a medical lien before?

7. Is there anyone here who would have a hard time believing that a doctor might

be biased to testify in favor of a plaintiff if he stood to make money when the plaintiff recovered?

8.   Is there anyone here who believes that just because an auto accident happened, a doctor should be allowed to provide treatment that is not reasonable or necessary?

9.   Is there anyone here who disagrees with the idea that a doctor might perform treatment that was <u>not</u> reasonable or necessary, when the doctor had a lien and stood to make money out of the lawsuit?

10.   Our judge is going to instruct you that the Plaintiff is not seeking compensation for any medical bills related to treatment he underwent after this accident, and you cannot compensate him for the cost of that treatment. Is there anyone here who would be unable to follow that charge?

11.   Our judge is going to instruct you that the Plaintiff is not seeking compensation for any lost wages related to time he missed from work after this accident, and you cannot compensate him for lost wages. Is there anyone here who would be unable to follow that charge?

12.   Our judge is also going to charge you that sympathy for a car wreck victim is not a valid grounds for an award.  When we serve as jurors, we are required to set aside sympathy and emotion, and issue a judgment based on the evidence. Is there anyone here who believes they would be unable to render a fair verdict

because they are just plain sympathetic to the Plaintiff?

13. As a juror in this trial, you will be asked to consider all evidence and the judge's instructions on the law and then render a verdict. Does anyone here believe they will not be able to do that?

14. Once the evidence has been presented and the judge instructs the jury on the law, the jurors will have to deliberate as a group to reach a verdict. Does anyone believe they will be unable to communicate or discuss their basis for a verdict with the group to help reach a unanimous verdict?

15. If after hearing all evidence and being fair to all parties, the evidence in this case warrants a much lower award for the Plaintiffs, say $50,000.00, is anyone going to have an issue returning a verdict like that?

16. We are in the middle of an ongoing COVID-19 pandemic.  Is there anyone here who is just so personally uncomfortable being in a room with other people, that you would be distracted from the evidence and unable to follow the proceedings or the judge's instructions?

17. Is there anyone here who has other distractions in your life, whether it's a childcare problem, or a sick relative, or the recent death of a loved one, or anything I haven't mentioned, that would distract you and prevent you from listening carefully to the evidence and the judge's instructions?

18. Is there anyone here who just believes that big trucks are bad and dangerous

and shouldn't be on the road at all?

19. Is there anyone here who has such strong feelings about the trucking industry or truck drivers that you would be unable to set aside a pre-existing prejudice and follow the evidence and the judge's instructions?

## Plaintiffs' Objections to Defendants' Voir Dire Questions

Plaintiffs object to Question Nos. 10, 11, 12 and 14:

 "Our judge is also going to charge you…"

The *voir dire* question improperly asserts that the Court will be instructing jurors regarding certain matters, when the Court has not even made any such determinations or rulings.

Plaintiffs object to Question No. 5:

Is there anyone here who would be unable to render a fair verdict if you found out that the doctors who gave the plaintiff treatment were in a referral relationship with the lawyers?

The *voir dire* question asserting that "doctors who gave the plaintiff treatment were in a referral relationship with the lawyers" is argumentative, mis-leading, assumes facts that will not be in evidence, and mis-states facts.

Plaintiffs object to Question No. 6:

> This case involves medical treatment provided by doctors on a
> medical lien, which means the doctors have a financial interest in the
> outcome of this case. Have any of you ever received treatment from a
> "lien doctor" or on a medical lien before?

The *voir dire* question is also argumentative, mis-leading, assumes facts that will
not be in evidence, and mis-states facts.  Dr. Adams was Plaintiff's treating
physician in this case for injuries caused by the collision.  Dr. Adams testified that
he has no financial interest in the outcome of this case. He is a doctor, who works
under a contract for Spine Center Atlanta and who is paid on a *per diem* basis
regardless of how many or how few patients he treats, regardless of who he is
treating and regardless of whether they have a successful or unsuccessful tort
claim.  Defense counsel specifically confirmed this testimony showing that Dr.
dams has no financial incentive or motivation or interest in this case when they
deposed him.

<u>Plaintiffs object to Question No. 7</u>:

> Is there anyone here who would have a hard time believing that a doctor might be biased to testify in favor of a plaintiff if he stood to make money when the plaintiff recovered?

The *voir dire* question is again argumentative, mis-leading, assumes facts that will not be in evidence, and mis-states facts. Dr. Adams was Plaintiff's treating physician in this case for injuries caused by the collision. Dr. Adams testified that he has no financial interest in the outcome of this case. He is a contracted doctor, who is paid on a *per diem* basis regardless of how many or how few patients he treats, regardless of who he is treating and regardless of whether they have a successful or unsuccessful tort claim. Defense counsel knows this. Defense counsel specifically confirmed this testimony showing that Dr. dams has no financial incentive or motivation or interest in this case when they deposed him

<u>Plaintiffs object to Question No. 8</u>:

> Is there anyone here who believes that just because an auto accident happened, a doctor should be allowed to provide treatment that is not reasonable or necessary?

The *voir dire* question is again argumentative, mis-leading, assumes facts

that will not be in evidence, and mis-states facts.  No evidence or testimony

in this case exists to suggest that the medical testament in this case was not

necessary or reasonable.  Defendants' sole medical expert – Dr. Keith Oborn

– testified that he was <u>not</u> asserting any opinions that unnecessary medical

treatment was provided to the Plaintiff. He rendered no opinions that any

medical treatment provided was unreasonable.

<u>Plaintiffs object to Question No. 9</u>:

> Is there anyone here who disagrees with the idea that a doctor might perform treatment that was not reasonable or necessary, when the doctor had a lien and stood to make money out of the lawsuit?

The *voir dire* question is again argumentative, mis-leading, assumes facts that will

not be in evidence, and mis-states facts.  First, no evidence or testimony in this

case exists to suggest that the medical testament in this case was not necessary or

reasonable.  Defendants' sole medical expert – Dr. Keith Osborn – testified that he

was <u>not</u> asserting any opinions that unnecessary medical treatment was provided to

the Plaintiff. He rendered no opinions that any medical treatment provided was

unreasonable. Second, Dr. Adams was Plaintiff's treating physician in this case for injuries caused by the collision.  Dr. Adams testified that he has no financial interest in the outcome of this case. He is a contracted doctor, who is paid on a *per diem* basis regardless of how many or how few patients he treats, regardless of who he is treating and regardless of whether they have a successful or unsuccessful tort claim. Further, defense counsel specifically confirmed this testimony showing that Dr. dams has no financial incentive or motivation or interest in this case when they deposed him.

<u>Plaintiffs object to Question No. 10</u>:

> Our judge is going to instruct you that the Plaintiff is not seeking compensation for any medical bills related to treatment he underwent after this accident, and you cannot compensate him for the cost of that treatment. Is there anyone here who would be unable to follow that charge?

The *voir dire* question is again argumentative, mis-leading, assumes facts that will not be in evidence, and mis-states facts.  No evidence of medical bills will be admitted in this case, as no such damages are being sought.  For the same reason, such a jury charge should not be given in any event.

<u>Plaintiffs object to Question No. 11</u>:

> Our judge is going to instruct you that the Plaintiff is not seeking compensation for any lost wages related to time he missed from work after this accident, and you cannot compensate him for lost wages. Is there anyone here who would be unable to follow that charge?

The voir dire question is again argumentative, mis-leading, assumes facts that will not be in evidence, and mis-states facts.  No evidence of lost wage s will be admitted in this case, as no such damages are being sought.  For the same reason, such a jury charge should not be given in any event.

**EXHIBIT C**

**Factual Summary of Plaintiffs' Cause of Action**

a.      The collision occurred on June 26, 2019 on I-75 northbound at or near the intersection of Jodeco Road at approximately 5:35 a.m. Plaintiff Steven Lowe was driving his car in the far right lane of I-75.  The Defendants' tractor-trailer was in the next lane over to the right.  Defendant ARMELIO changed lanes and struck Plaintiff Steven Lowe's vehicle, causing Mr. Lowe to lose control of and swerve in his vehicle. The force of the hit caused by Defendant ARMELIO's tractor-trailer caused Mr. Lowe's vehicle to swerve off the roadway, through a ditch and up an embankment, where it came to rest some distance from the roadway. The collision and aftermath caused disabling damage to Mr. Lowe's vehicle. Mr. Lowe is claiming that he was injured because of the collision.

In this case, the Defendants have admitted that they were negligent at the time of the collision and that they are legally responsible for causing the subject collision in this case.

Defendants have also admitted that ARMAS ARMELIO was acting within the course and scope of his employment and agency with Defendant DIFEI TRANSPORT and, thereof, DIFEI TRANSPORT is responsible for paying any judgment rendered by the jurors in this case.

The Georgia pattern instructions for non-economic damages follow the language of the charge affirmed in *Food Lion v. Williams*, 219 Ga. App. 352, 464 S.E.2d 913 (1995).  The Food Lion decision sets forth the scope of factors a jury may consider when assessing compensation for non-economic damages pain and suffering to include:

1. interference with normal living,

2. interference with enjoyment of life,

3. loss of capacity to labor and earn money,

4. impairment of bodily health and vigor,

5. the fear of extent of injury,

6. shock of impact,

7. actual pain and suffering (past and future), and

8. past and future mental anguish.

Mr. Lowe is seeking recovery for his non-economic or human damages, including for:  (1) interference with his normal living;  (2) interference with his enjoyment of life; (3) his loss of capacity to labor and earn money; (4) the impairment of bodily health and vigor; (5) the fear of the extent of his injury; (6) the shock of the tractor-trailer's impact with his car; (7) the actual pain and suffering (past and future); and (8) the past and future mental anguish.

## **Steven Lowe's Injuries & Treatment**

After treating initially with Piedmont Henry Hospital, Mr. Lowe sought treatment at Spine Center Atlanta. Mr. Lowe underwent MRI scans of his lumbar spine, cervical spine and left shoulder to further diagnose his injuries. Mr. Lowe underwent physical therapy to see whether such conservative treatment would provide relief. Steven continued to have pain in his left shoulder, so he was referred for a steroid injection in his left shoulder. Dr. Brian Adams performed a steroid injection in Mr. Lowe's should er on October 28, 2019.

Steven continued to treat his neck and back with physical therapy and massage therapy, but he was still having low back pain. Dr. Brian Adams recommended for injections in his low back.  On December 4, 2019, Mr. Lowe underwent a bilateral L4/5 and L5/S1 lumbar facet joint medial branch blocks.

Mr. Lowe had some relief in his back for the next 2-3 days, but his pain returned. Mr. Lowe reported this to his treating physician, Dr. Bryan Adams, who recommended that he was a candidate for radiofrequency ablation in the low back. On January 6, 2020, Mr. Lowe underwent a bilateral L4/5, and L5/S1lumbar facet joint denervation via radiofrequency ablation.

Mr. Lowe also continued to have pain in his neck.  Mr. Lowe then underwent a cervical epidural steroid injection C7/T1 under fluoroscopic guidance in an effort to cure his pain.

Steve was still having severe pain in his low back, and he was given another epidural injection in his low back but it was unsuccessful so he was referred for a surgical consult where they went over all his records and recommended a surgery in the lumbar spine.

On June 1, 2020, Mr. Lowe had a spinal cord stimulator inserted along his spine under fluoroscopic Guidance. After the surgery, Steve's pain improved. Mr. Lowe will have to have the spinal cord stimulator replaced approximately every nine (9) years. Given his age, Mr. Lowe will have to have his spinal stimulator replaced another four (4) times over his lifetime.

### Plaintiffs' Statement of Relevant Rules,

### Regulations, Statutes, Ordinances, and Illustrative Case Law

The Federal Rules of Civil Procedure, Federal Rules of Evidence and Local Rules for the Northern District of Georgia apply to the within action as well as the following pertinent Georgia statutes, codes, regulations, legal principles, standards and customs and case law:

Georgia tort law and common law negligence principles including those codified in O.C.G.A. § 51-1-1 et. seq. and discussed in case law apply to this action. These legal standards establish that Defendant Gisca had a duty to operate his vehicle in a reasonable and safe manner on the day of the subject collision and his failure to do so entitles Plaintiff to recover his damages. Defendant HMD is responsible for Defendant Gisca's negligent actions pursuant to the doctrine of *respondeat superior* and the principles of agency.

In order to state a cause of action for negligence under Georgia law, a Plaintiff must establish that there is: (1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty. Galanti v. United States of America, 709 F.2d 706 (11th Cir. 1983) (citing Bradley Center v. Wessner, 250 Ga. 199, 200 (1982)).

Negligence is defined as the absence of ordinary diligence. *See* O.C.G.A. § 51-1-2. Georgia "imposes a duty on all drivers to exercise ordinary care with regard to other drivers on or users of the highway." Eatmon v. Weeks, 323 Ga. App. 578, 579, 746 S.E.2d 886, 888 (2013). See also Everett v. Clegg, 97 Ga. App. 387, 103 S.E.2d 432 (1958)(drivers have a duty to drive in a careful, reasonable

and safe manner as any ordinary prudent person would do under similar and the same circumstances). Every driver is under a duty to keep a proper and diligent lookout for potential hazards and a driver has no right to assume that the road ahead of him is clear of traffic. Kelly v. Fann, 343 Ga.App. 351, 352 (2017); Eatmon v. Weeks, 323 Ga. App. 578, 579, 746 S.E.2d 886, 888 (2013); Hayes v Crawford, 317 Ga.App. 75, 78 (2012).

The Georgia Uniform Rules of the Road and applicable case law are pertinent to this action and establish that Defendant Gisca was negligent *per se*. See e.g. O.C.G.A. § 40-6-48; O.C.G.A. § 40-6-180; O.C.G.A. § 40-6-241; and O.C.G.A. § 40-6-390. All drivers are charged with the duty to exercise ordinary care under the circumstances. Malcolm v. Malcolm, 112 Ga.App. 151, 155 (1965). A violation of the Rules of the Road supports a claim for negligence *per se*. Sinclair Disposal Service, Inc. v. Ochoa, 265 Ga.App. 172 (2004). A violation of O.C.G.A. § 40-6-48(a), which required the driver to drive his vehicle "as nearly as practicable entirely within a single lane" constitutes a violation of the Uniform Rules of the Road and establishes a prima facie case of negligence *per se*. Whole Foods Market Group, Inc. v. Shepard, 333 Ga.App. 137 (2015).

The Federal Motor Carrier Safety Regulations ("FMCSRs") contained in Title 49 of the Code of Federal Regulations Parts 350, 382, 383, and 390 through 397 have been adopted under Georgia law. See Ga. Comp. R. & Regs. 515-16-4-

44

.01; Solano-Rodriguez v. State, 295 Ga. App. 896, 896, 673 S.E.2d 351, 352 (2009).

A negligent party takes a plaintiff in whatever condition he finds him or her, even if that condition is weaker, more frail or more susceptible to injury than normal. Cordero v. State, 296 Ga. 703, 770 S.E.2d 577 (2015); AT Sys. Southeast, Inc. v. Carnes, 272 Ga. App. 671, 613 S.E.2d 150 (2005); and Coleman v. Atlanta Obstetrics & Gynecology Group, 194 Ga.App. 508, 390 S.E.2d 856 (1990).

### Plaintiff's Enumeration of Negligent Acts By Defendants

Defendants breached their duty of care and was negligent in at least the following ways:

a.      Failing to maintain his lane of traffic;

b.      Failing to keep a proper and sufficient following distance from traffic ahead of and around him;

c.      Failing to keep a proper lookout for traffic;

d.      Failing to make reasonable and proper observations while driving;

e.      Failing to drive at a reasonable and prudent speed under the conditions;

f.      Failing to drive at a reasonable distance;

g.      Failing to obey traffic laws; and

h.      Otherwise failing to act reasonably and prudently as a driver should under
the circumstances.

## PLAINTIFFS' SUMMARY OF DAMAGES CLAIMED

Plaintiffs are seeking recovery for the following categories of damages:

### General Damages - Pain & Suffering

General damages are those which the law presumes flow from any tortious act and they may be recovered without proof of any amount. See O.C.G.A. § 51-12-2(a). Plaintiff's pain and suffering damages includes compensation for (1) interference with normal living; (2) interference with enjoyment of life; (3) loss of capacity to labor and earn money; (4) impairment of bodily health and vigor; (5) fear of extent of injury; (6) shock of impact; (7) actual pain and suffering; (8) mental anguish; and the (9) the extent to which Plaintiffs must limit their activities. See Food Lion v. Williams, 219 Ga.App.352 (1995). The measure of these damages is the enlightened conscience of the jury after hearing the evidence presented at trial. See O.C.G.A. § 51-12-2(a); Georgia Suggested Pattern Jury Instructions, Volume 1: Civil Cases, Fifth Edition, July 2014 at Section 66.501 citing Redd v Peters, 100 Ga.App. 316 (1959) and Western, etc. Railroad Co. v. Young, 83 Ga. 5

Georgia recognizes a cause of action for loss of spousal consortium. *W.J. Bremer Co. v. Graham*, 169 Ga. App. 115, 116 (1983). Each spouse is entitled to the:

> comfort, companionship, and affection of the other. The rights of the one and the obligations of the other spring from the marriage contract, are mutual in character, and attach to the husband as husband and to the wife as wife. Any interference with these rights, whether of the husband or of the wife, is a violation, not only of a natural right, but also of a legal right arising out of the marriage relation."

Plaintiff's counsel is aware of the Court's requirement for Plaintiff to list in this Pretrial Order the amount of each type of damage Plaintiff is seeking. Given that the measure of such non-economic damages is left to the enlightened conscience of the jury, Plaintiffs and their counsel will not make final decisions as the specific dollar number to ask the jury for until all the evidence is presented at trial, and counsel can assess how the evidence came in. However, Plaintiff provides the following ranges of damages with the express reservation of their right to ask for more or less at trial.   Plaintiffs anticipate seeking between three and four million dollars for Mr. Lowe's non-economic damages and for Mrs. Lowe's non-economic damages for loss of consortium and services of her husband as permitted by O.C.G.A. § 9-3-33.

### Attorney Fees

Plaintiff may be entitled to recover his attorney fees and expenses pursuant to O.C.G.A § 9-11-68. The requested amount will be dependent on the total amount of the recovery and expense total.  Plaintiff is otherwise not seeking an award for attorney fees and expenses.

### Interest

Plaintiff may be entitled to recover interest pursuant to O.C.G.A § 9-11-68 and/or O.C.G.A. § 51-12-14.

### DEFENDANTS' OBJECTIONS TO PLAINTIFF'S EXHIBIT C

Defendants object to the Plaintiffs' statement of the case to the extent it is long, argumentative, and addresses facts and law that are not relevant to this case. Defendants have admitted that Defendant Armelio owed a duty of care to the Plaintiff and that he breached that duty. Any discussion of negligence, negligence per se, or the rules of the road has no relevance to this trial. Further, Defendants have a pending motion to exclude Plaintiffs' medical expert Dr. Brian Adams and object to any evidence of Plaintiff Steven Lowe's medical diagnosis or treatment to the extent Plaintiffs are unable to lay proper foundation or provide admissible causation evidence. Defendants believe that evidence of any medical procedures that the Plaintiff underwent after this accident are no longer relevant, given Plaintiffs' recent

decision to abandon claims for medical expenses or special damages of any kind, and that to the extent that medical treatment is probative of the Plaintiff's claims of pain and suffering, it is more prejudicial to Defendants and should be excluded pursuant to Rule 403.

## **EXHIBIT D**

## **Defendant's Outline of the Case**

FACTS OF THE ACCIDENT:

Defendant Armas Armelio owed the Plaintiff a duty of care and breached that duty, resulting in a collision with the Plaintiff. Defendants dispute that the Plaintiffs' claimed injuries and medical treatment were caused by the actions of Defendants. Defendants' defense also includes the allegation that Plaintiff's injuries alleged from this incident were pre-existing and not related to this incident. Should this Court allow evidence of Plaintiff's medical treatment to be presented at trial, Defendants believe Plaintiffs' damages presentation has been intentionally inflated, and question the bias, intent and motive of Plaintiff's physicians, who have issued their treatment on a lien.

DEFENDANT'S ITEMIZED LEGAL AUTHORITIES:

Defendants' reliance on the case law below is contingent upon the Court's ruling on the admissibility of the testimony of Dr. Adams and the admissibility of evidence of Plaintiff's post-accident medical treatment.

**Referral Arrangement Can Go to Bias, Intent and Motive**

Defendant does not need to be able to prove a premeditated plan of deceit in order to probe potential bias. [] Instead, Defendant needed only to show that ML Healthcare's payment arrangement had "any tendency" to make bias more probable than it would be without the evidence. See Fed. R. Evid. 401(a). That requirement is easily satisfied

here. A jury might infer that Plaintiff's doctors were incentivized by ML Healthcare's referral and payment arrangement to provide testimony that was more favorable to Plaintiff than it otherwise would have been. If so, the jury would have found bias, which is clearly a relevant consideration in evaluating a witness's credibility.

*ML Healthcare Servs., LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1302–03 (11th Cir. 2018).

*Salkic v. Heartland Express, Inc*., 813 Fed.Appx. 444 (11th Cir. 2020) (evidence doctor performed 90% of his laser spine surgeries on lawsuit plaintiffs went to bias, intent and motive).

*Stephens v. Castano-Castano*, 346 Ga. App. 284, 290–91 (2018) (exclusion of evidence of doctor's financial bias resulted in reversal of $700,000 jury verdict).

## Pattern of Compensation can go to Bias

A showing of a pattern of compensation in past cases raises an inference of the possibility that the witness has slanted his testimony in those cases so he would be hired to testify in future cases.

*Hudson v. Wal-Mart Stores E., LP,* 3:19-CV-58 (CDL), 2020 WL 8882048, at *2 (M.D. Ga. Oct. 28, 2020)(holding copies of all financial documents showing amount earned by independent medical examiner at behest of defense counsel over past three years relevant to bias). [By implication, a lien doctor with a history of treating a plaintiff's firm's clients should also be required to produce the amounts he has made from such treatment].

## Plaintiff has Burden to Prove Medical Causation

The mere fact that an accident happened and a plaintiff was injured affords no basis for recovery unless the plaintiff carries her burden of proof and shows that the accident was caused by specific acts of negligence          of          the          defendant.

*Berry v. Hamilton*, 246 Ga. App. 608, 609 (2000).

## Expert Causation Evidence is Required to Avoid Directed Verdict as to Damages

Expert evidence is only necessary "where the issue of causation presents 'specialized medical questions,' *i.e.*, where the link between a defendant's actions and the plaintiff's injury is beyond common knowledge and experience and presents medical questions that can be answered accurately only by witnesses with specialized expert knowledge." *Cooper v. Martin Transp.*, 539 F. App'x 963, 967–68 (11th Cir. 2013). For instance, "[a] causal connection, requiring expert medical testimony, must be established where the potential continuance of a disease is at issue." *Jordan v. Smoot*, 191 Ga. App. 74, 74 (1989); *see also Bruce v. Classic Carrier, Inc.*, 2014 WL 1230231 (N.D. Ga. Mar. 24, 2014) at *6 ("[T]hus, if there is evidence that the complained-of injury is a preexisting condition, the plaintiff must produce medical testimony explaining why the tortious event aggravated the prior condition to survive a motion for summary judgment."). Put another way, "expert evidence is not required in the mine run of simple negligence cases, but it is required in some negligence cases." *Cowart v. Widener*, 287 Ga. 622, 629 (2010).

*Jones v. Wal-Mart Assocs., Inc.*, No. 1:19-CV-03705-SDG, 2021 WL 243285, at *3 (N.D. Ga. Jan. 25, 2021)(expert testimony required to survive motion for partial summary judgment as to damages where medical questions raised are outside common knowledge and experience).

Thus, if there is evidence that the complained-of injury is a preexisting condition, the plaintiff must produce a medical testimony explaining why the tortious event aggravated the prior condition to survive a motion for summary judgment.

*Bruce v. Classic Carrier, Inc.*, 2014 WL 1230231 (N.D. Ga. Mar. 24, 2014) at *6.

## Expert Must Perform Differential Analysis to Render Scientifically-Valid Causation Opinion (Federal Court)

*Cooper v. Marten Transport Ltd.*, 539 Fed.Appx. 963, 966 (11th Cir. 2013).
*Rangel v. Anderson*, 202 F. Supp. 3d 1361, 1370 (S.D. Ga. 2016).

**Doctor Who Expresses Causation Opinion where Causation is Not Necessary for Diagnosis or Treatment Becomes Expert, Because He or She is Offering a Hypothesis – a Hypothetical**

> Dr. Meier did not need to determine how Wilson was injured in order to treat him in this case. Testimony regarding his diagnosis of the injury itself—that Wilson's spine was fractured—would be permissible as lay testimony without the Daubert analysis, but his statement about the cause of the injury was an hypothesis. "And the ability to answer hypothetical questions is the essential difference between expert and lay witnesses."

*Wilson v. Taser Int'l, Inc.*, 303 Fed. Appx. 708, 712–13 (11th Cir. 2008) citing *United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005) (holding that treating physician provided expert testimony where she expressed an opinion on causation where the determination of the cause of the injury did not aid in the treatment thereof).

> Dr. Scott did not need to determine how Grant was injured to treat him in this case. Her diagnosis of the injury itself, that Grant's jaw was fractured, would be permissible lay testimony, but her statement about the cause of the injury was, as she admitted, a "hypothesis." And the ability to answer hypothetical questions is "[t]he essential difference" between expert and lay witnesses. *Asplundh Mfg. Div. v. Benton Harbor Eng'g,* 57 F.3d 1190, 1202 n. 16 (3d Cir.1995) (quoting *Teen-Ed Inc. v. Kimball Int'l, Inc.,* 620 F.2d 399, 404 (3d Cir.1980)); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

*United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005).

> Dr. Firth's status as Plaintiff's treating physician does not immunize his testimony from *Daubert*. The subject of this motion to exclude is Dr. Firth's opinions regarding causation. These opinions clearly fall within FRE 702's scope of "scientific knowledge." Therefore, Dr. Firth's opinion is an expert opinion and must satisfy Daubert and Rule 702.

*Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 693 (N.D. Ga. 2006).

**Sand-Bagging is not Allowed**

> As the Southern District has noted, the purpose of expert disclosure
> generally is to allow the parties to prepare for cross-examination of the
> expert and to avoid sand-bagging: "Rule 26(a)(2) deters procrastination
> and sandbagging. Hamlett did both. It is unacceptable to make a party
> wait, and thus be surprised, at a deposition."

*Hamlett v. Carroll Fulmer Logistics Corp.*, 176 F. Supp. 3d 1360, 1365 (S.D. Ga.
2016).

> [T]he mere fact that witnesses may be available for deposition is
> insufficient to excuse noncompliance with Rule 26(a)(2) because
> "obviat[ing] the need to provide Rule 26(a)(2) disclosures and reports
> by simply making ... experts available to be deposed would render the
> Rule meaningless[.]" *Kassim v. United Airlines, Inc.*, 320 F.R.D. 451,
> 454 (E.D. Mich. 2017) (quoting *Rangel v. Anderson*, 202 F.Supp.3d
> 1361, 1367 (S.D. Ga. 2016)).

*Ogle v. Koorsen Fire & Sec., Inc.*, 336 F. Supp. 3d 874, 877 (S.D. Ohio 2018).

**Collateral Source Rule Does Not Bar Admission of Evidence Doctor has Stake
in Case**

> Stephens simply sought to introduce evidence that Dr. Chappuis
> entered into an arrangement whereby the physician would be paid from
> the proceeds of Castano's recovery. Thus, excluding this evidence did
> not serve the underlying rationale of the collateral source rule.

*Stephens v. Castano-Castano*, 346 Ga. App. 284, 290 (2018).

## **EXHIBIT E**

## **STIPULATED FACTS**

1.  At the time of the subject collision in this case, Defendant ARMAS

    ARMELIO was acting within the course and scope of his employment and

    agency with Defendant DIFEI TRANSPORT.

2.  Defendants are admitting negligence and legal responsibility for causing the

    subject collision in this case.

## EXHIBIT F-1

Plaintiff <u>will</u> have the following witnesses present at trial:

**Steven Lowe.**

**Siobhan Lowe.**

Plaintiff <u>may</u> have the following witnesses present at trial:

**Defendant Driver Armas Armelio**

**Defendant Difei Transport and its 30(b)(6) Corporate Representative**

**Henry County Police Officer M. Smith**
**Lee Davis**

**Dr. Onika Popo-James, MD**

**Dr. Bryan Adams, MD.**

**Michel Scott**

**Alando Wilson**

**Janelle Wilson**

**Shannon Yates**

**Rochelle McLauglin**

Any witness listed on Defendant's witness list

Any witness required for impeachment purposes

Any witness required for rebuttal purposes

Any witness required to lay foundation for the introduction of relevant

documentation

## EXHIBIT F-2

## DEFENDANT'S WITNESSES

**Defendant <u>will</u> have present at trial:**

**Defendant Driver Armas Armelio**

**Defendant <u>may</u> have present at trial:**

**Spine Center Atlanta and its 30(b)(6) Corporate Representative**

**Defendant Difei Transport and its 30(b)(6) Corporate Representative**

**Dr. Keith Osborn, MD**
- **Dr. Osborn is an expert witness and his opinions may be found in his expert disclosure report.**

**Henry County Police Officer M. Smith**

**Lee Davis, SLG Sports and Entertainment**

**Dr. Onika Popo-James, MD**

**Michael Scott**

Any witness listed on Plaintiff's witness list

Any witness required for impeachment purposes

Any witness required for rebuttal purposes

## EXHIBIT G-1

1.      Medical records from Spine Center Atlanta, Pages 001 - 098

1A      Demonstrative:  Lumbar Branch Blocks and Radiofrequency Ablations

1B      Demonstrative:  Epidural Steroid Injections on the Cervical - Lumbar Spine

1C      Demonstrative: Spinal Cord Stimulator Implant Surgery

2.      Color photograph of battery and leads

3.      Imaging studies, 12 pages

4.      Annuity Mortality Table for 1949, Ultimate

5.      Family Health Clinic medical records attached as D-1 to deposition of Dr.

        Popo-James and bates numbered FHC 0001 – 0081.

6.      Georgia Uniform Motor Vehicle Accident Report 2019-00013307

7.      Georgia Uniform Traffic Citation, Summons, and Accusation to Armas

        Armelio

8.      Certified Court Disposition – Armas Armelio - bond forfeiture

9.      911 call recording

10.     Investigating Police Officer's vest camera footage

11.     Photos of Plaintiff's vehicle at scene of collision (5)

12.     Photos of Plaintiff's vehicle at wrecker lot (6)

13.     Photos of Plaintiff's Injuries

14.   Photos of Plaintiff working as Intern at SLG Sports & Entertainment, LLC

15.   Piedmont Henry Hospital Medical Records

16.   Henry County Ambulance Medical Records

17.   American Health Imaging Medical Records

18.   Spine Center Atlanta Medical Records

19.   Employment Offer Letter from SLG Sports & Entertainment, LLC

20.   Complaint

21.   Answer

22.   Armas Armelio's Responses To Plaintiff's First Combined Set Of Written
      Discovery

23.   Response Of Difei Transport, LLLC To Plaintiff's First Combined Request
      For Production Of Documents And Notice Of Taking Deposition Duces
      Tecum

24.   Responses Of Difei Transport, Llc To Plaintiff's First Combined
      Interrogatories And Requests For Admissions Served With Complaint

25.   Defendant Difei Transport, Llc's  Amended Initial Disclosures

26.   Plaintiff's Responses To Defendant Difei Transport, LLC's First
      Interrogatories And Request For Production Of Documents To Plaintiff
      Steven Lowe

27.   Plaintiff's Initial Disclosures

28.   Defendants' Initial Disclosures

29.   All pleadings in this case.

30.   All discovery requests to Defendants by Plaintiff.

31.   All discovery responses received from Defendants.

32.   All documents listed by Defendant.

33.   All deposition transcripts, videos, and exhibits in this case.

34.   Any photographs of the scene.

35.   Any photographs of the vehicles involved in the subject collision.

Plaintiff objects to identifying any evidence that is purely impeachment evidence. Any witness may be impeached with prior testimony.

Plaintiff anticipates using demonstrative aids during the course of the trial that will not be tendered as evidence and therefore are not specifically identified above.

Plaintiff reserves the right to introduce any pleadings and/or discovery responses in this case.

Plaintiff may offer any rebuttal or impeachment evidence not listed above which could not reasonably have been anticipated. Plaintiff's objections to Defendants' Exhibit List are attached to Defendants' Exhibit List.

Plaintiff hereby notifies Defendants pursuant to F.R.E. 902(11) and 803(6) that they may introduce some or all of the medical records from the entities listed below at trial via certifications as provided in the Federal Rules of Evidence:

- Police Report/records

- American Health Imaging

- Henry County Ambulance

- Inphynet Primary Care Physician

- Piedmont Henry Hospital

- Radiology Associates of Atlanta

- Spine Center Atlanta – Corporate

- All other certified records identified in the exhibit list above

Plaintiff requests Defendants notify Plaintiff prior to the pre-trial conference if they plan to object to or challenge the certification from any of these entities so that Plaintiff has sufficient time to correct any supposed errors and/or arrange for a deposition of a records custodian, if necessary.

## DEFENDANTS' OBJECTIONS TO PLAINTIF'S EXHIBIT LIST

| | |
|---|---|
| 1 | Relevance- Plaintiff is only seeking recovery for pain and suffering Prejudicial- Any evidence of Plaintiff's post-accident medical treatment that is not redacted to only reflect recorded evidence of Plaintiff's reported pain at the time the record was made is more prejudicial than probative. |
| 2 | Relevance- Plaintiff is only seeking recovery for pain and suffering Prejudicial- Any evidence of Plaintiff's post-accident medical treatment that is not redacted to only reflect recorded evidence of Plaintiff's reported pain at the time the record was made is more prejudicial than probative. |
| 3 | Relevance- Plaintiff is only seeking recovery for pain and suffering Prejudicial- Any evidence of Plaintiff's post-accident medical treatment that is not redacted to only reflect recorded evidence of Plaintiff's reported pain at the time the record was made is more prejudicial than probative. |
| 5 | Relevance- Plaintiff is only seeking recovery for pain and suffering Prejudicial- Any evidence of Plaintiff's post-accident medical treatment that is not redacted to only reflect recorded evidence of Plaintiff's reported pain at the time the record was made is more prejudicial than probative. |
| 7 | Relevance- Defendants have admitted responsibility for the accident. |
| 8 | Relevance- Defendants have admitted responsibility for the accident. |
| 9 | Relevance- Plaintiff is only seeking recovery for pain and suffering Prejudicial- Any evidence of Plaintiff's post-accident medical treatment that is not redacted to only reflect recorded evidence of Plaintiff's reported pain at the time the record was made is more prejudicial than probative. |
| 15 | Relevance- Plaintiff is only seeking recovery for pain and suffering Prejudicial- Any evidence of Plaintiff's post-accident medical treatment that is not redacted to only reflect recorded evidence of Plaintiff's reported pain at the time the record was made is more prejudicial than probative. |
| 16 | Relevance- Plaintiff is only seeking recovery for pain and suffering Prejudicial- Any evidence of Plaintiff's post-accident medical treatment that is not redacted to only reflect recorded evidence of Plaintiff's reported pain at the time the record was made is more prejudicial than probative. |

| 17 | Relevance- Plaintiff is only seeking recovery for pain and suffering Prejudicial- Any evidence of Plaintiff's post-accident medical treatment that is not redacted to only reflect recorded evidence of Plaintiff's reported pain at the time the record was made is more prejudicial than probative. |
|---|---|
| 18 | Relevance- Plaintiff is only seeking recovery for pain and suffering Prejudicial- Any evidence of Plaintiff's post-accident medical treatment that is not redacted to only reflect recorded evidence of Plaintiff's reported pain at the time the record was made is more prejudicial than probative. |
| 19 | Relevance and Prejudicial- Plaintiffs have withdrawn any claim for lost wages. |
| 21-24 | Relevance- Defendants have admitted responsibility for the accident. |
| 25 | Relevance- Defendants have admitted responsibility for the accident and evidence of insurance. |
| 28 | Relevance- Defendants have admitted responsibility for the accident. |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

Defendants object to any portions of Plaintiff's listed evidence which are intended to prove that Defendants previously contested negligence. Those issues are no longer contested and irrelevant to the trial of the case which is solely related to causation and damages.

Defendants object to evidence of Plaintiff's prior pleadings and discovery responses which claim that Plaintiff has lost wages. Plaintiff has withdrawn that claim.

Defendants object to introduction of any of Plaintiff's medical records that are not redacted to only reflect recorded evidence of Plaintiff's reported pain at the time the record was made, as anything more is more prejudicial than probative to Defendants in light of Plaintiff's decision to abandon all special damages. Additionally, introduction of that evidence will result in jury confusion. Defendants alternatively object to Plaintiff's medical records which render a causation opinion or relate Plaintiff's claimed injuries to this accident, subject to the pending Motion to Exclude Testimony of Dr. Brian Adams. Defendants further object to any records which indicate that the Plaintiff will need future procedures on the same grounds.

## EXHIBIT G-2

### Exhibit List for Defendants

Defendants' list of exhibits is in alternative to the objections listed above regarding introduction of Plaintiffs' medical records. It is also subject to change based on the Court's ruling on Defendants' pending Motion to Exclude Dr. Brian Adams.

1.   All Documents Produced by Spine Center Atlanta

2.   Imaging studies, 12 pages

3.   Family Health Clinic medical records

4.   Georgia Uniform Motor Vehicle Accident Report 2019-00013307

5.   Investigating Police Officer's vest camera footage

6.   Photos of Plaintiff's vehicle at scene of collision (5)

7.   Photos of Plaintiff's vehicle at wrecker lot (6)

8.   Photos of Plaintiff working as Intern at SLG Sports & Entertainment, LLC

9.   Piedmont Henry Hospital Medical Records

10.  Henry County Ambulance Medical Records

11.  American Health Imaging Medical Records

12.  Eagles Landing Family Practice Medical Records

13.     Plaintiff's Responses To Defendant Difei Transport, LLC's First

        Interrogatories And Request For Production Of Documents To Plaintiff

        Steven Lowe

14.     Plaintiff's Initial Disclosures

15.     All documents listed by Plaintiffs.

16.     All deposition transcripts, videos, and exhibits in this case.

17.     Any photographs of the scene.

18.     Any photographs of the vehicles involved in the subject collision.

    Defendants may offer any rebuttal or impeachment evidence not listed above
which could not reasonably have been anticipated.

    Defendants hereby notify Plaintiffs pursuant to F.R.E. 902(11) and 803(6)
that they may introduce some or all of the medical records from the entities listed
below at trial via certifications as provided in the Federal Rules of Evidence:

- Police Report/records

- American Health Imaging

- Family Health Clinic

- Eagles Landing Family Practice

- Henry County Ambulance

- Inphynet Primary Care Physician

- Piedmont Henry Hospital

- Radiology Associates of Atlanta

- Spine Center Atlanta – Corporate

- All other certified records identified in the exhibit list above

## <u>PLAINTIFF'S OBJECTIONS TO DEFENDANT'S EXHIBIT LIST</u>

| 1 | Rules 401 and 403.  Plaintiff objects to the introduction of billing records on grounds that these are not relevant to any fact at issue in this case.  The billing records are not of any consequence in determining this action.  In addition to lacking any probative value, the admission of such billing records is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, and misleading the jury.  Plaintiff is not seeking medical bills as an element of tier damages.  Plaintiff is seeking compensation for non-economic damages pain and suffering to include:<br><br>   a)  interference with normal living,<br><br>   b)  interference with enjoyment of life,<br><br>   c)  loss of capacity to labor and earn money,<br><br>   d)  impairment of bodily health and vigor,<br><br>   e)  the fear of extent of injury,<br><br>   f)  shock of impact,<br><br>   g)  actual pain and suffering (past and future), and<br><br>   h)  past and future mental anguish. |
|---|---|
|  |  |
|  |  |

Plaintiff reserves the right to object to any demonstrative that has not been created yet.

## **EXHIBIT H-1**

Plaintiff is currently unaware of the need for any trial briefs. Plaintiff shall submit all necessary trial briefs in accordance with the deadline set above.

## EXHIBIT H-2

Defendants are currently unaware of the need for any trial briefs. Defendants

shall submit all necessary trial briefs in accordance with the deadline set above.

## **EXHIBIT I-A**

## **Plaintiff's Proposed Verdict Form**

1.  Did the subject collision proximately cause Plaintiff Steven Lowe's alleged damages in this case?

    _____Yes _____No

2.  If your answer to Question No. 1 is "Yes," what amount of money damages should be awarded to Plaintiff Steven Lower for damages caused to him by the subject collision?

    We, the jury, find in favor of the Plaintiffs and against the Defendants as follows:

    Plaintiff Steven Lowe's money damages resulting from the collision are $_____.

3.  Did the subject collision proximately cause Plaintiff Siobhan Lowe's alleged damages in this case?

    _____Yes _____No

4.  If your answer to Question No. 1 is "Yes," what amount of money damages should be awarded to Plaintiff Siobhan Lowe for the damages caused to her by the subject collision?

Plaintiff Siobhan Lowe's money  resulting from the collision are

$_____.

-OR-

_____We, the jury, find in favor of the Defendants and against the Plaintiffs

This _____ day of _____, 2022.

_____
FOREPERSON

**<u>EXHIBIT I-B</u>**

**<u>Defendants' Proposed Special Verdict Form:</u>**

1. Did the subject collision proximately cause Plaintiff Steven Lowe's alleged pain and suffering in this case?

   _____Yes _____No

2. If your answer to Question No. 1 is "Yes," what amount of money damages should be awarded to Plaintiff Steven Lower for pain and suffering caused to him by the subject collision?

   We, the jury, find in favor of the Plaintiffs and against the Defendants as follows:

   Plaintiff Steven Lowe's money damages for pain and suffering are

   $_____.

3. Did the subject collision proximately cause Plaintiff Siobhan Lowe's alleged damages for loss of consortium in this case?

   _____Yes _____No

4. If your answer to Question No. 1 is "Yes," what amount of money damages should be awarded to Plaintiff Siobhan Lowe for loss of consortium caused by the subject collision?

Plaintiff Siobhan Lowe's money damages resulting from loss of consortium

are $_____.

-OR-

_____We, the jury, find in favor of the Defendants and against the Plaintiffs

This _____ day of _____, 2022.

_____
FOREPERSON