Page 1

1            IN THE UNITED STATES DISTRICT COURT

             FOR THE NORTHER DISTRICT OF GEORGIA

2                     ATLANTA DIVISION

3

4

       STEVEN LOWE,

5

6            Plaintiff,           CIVIL ACTION FILE NO.:

7        vs.

8                              1:20-CV-05224-CAP

9

       DIFEI TRANSPORT, LLC,

10     AND ARMAS ARMELIO,

11

12           Defendants.

13

14

15                    DEPOSITION OF

16                    DANIEL LINCOLN

17                  NOVEMBER 15, 2021

18                     10:00 AM

19            MCMICKLE, KUREY & BRANCH, LLP

20           217 ROSWELL STREET SUITE 200

21            ALPHARETTA, GEORGIA 30009

22

23

24

25        ANGELA A. SANDERS, CCR 6607-8767-7573-9392

Page 2

1                    APPEARANCES OF COUNSEL
2

ON BEHALF OF THE PLAINTIFF:

3

          ROBERT S. MCEVOY, ESQUIRE
4         WITHERITE LAW GROUP, LLC
          600 PEACHTREE STREET NE SUITE 4010
5         ATLANTA, GEORGIA 30308
          Office: (800) 878-2597
6         E-mail: SEAN.MCEVOY@WITHERITELAW.COM
7

ON BEHALF OF THE DEFENDANTS:

8

          MATTHEW R. SESSIONS, ESQUIRE
9         MCMICKLE, KUREY & BRANCH, LLP
          217 ROSWELL STREET SUITE 200
10        ATLANTA, GEORGIA 30009
          Office:  (678) 824-7800
11        E-mail:  MSESSIONS@MKBLAWFIRM.COM
12

13  ON BEHALF OF NON-PARTY SPINE CENTER ATLANTA, LLC, AND
    DANIEL LINCOLN:

14

15        KASSANDRA M. LAWSON, ESQUIRE
          HULSEY, OLIVER & MAHAR, LLP
16        200 E. E. BUTLER PARKWAY
          GAINESVILLE, GEORGIA 30503
17        Office: (770) 532-6312
          E-mail: KML@HOMLAW.COM
18

19

20

21

22  ALSO PRESENT:
23        KRISHAN PATEL, VIDEOGRAPHER
24

25

Daniel Lincoln                              November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 3

1                    INDEX   TO   EXAMINATIONS

2   DANIEL LINCOLN                                        PAGE

3   Examination by Mr. Sessions                              4

4   Examination by Mr. McEvoy                               56

5

6                      INDEX   TO   EXHIBITS

7   DEFENDANTS'              DESCRIPTION              PAGE

8   Exhibit D3      Plaintiff updated medical charges   29

9

10

11  PLAINTIFF'S              DESCRIPTION              PAGE

12  Exhibit 1      Plaintiff billing ledger             56

13  (Exhibit D3 retained)

14

15

16

17

18

19

20

21

22

23

24

25

Daniel Lincoln                    November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 4

1              P R O C E E D I N G S

2              VIDEOGRAPHER:  Today's date is

3         November 15, 2021, and the time is 10:21 a.m.  This

4         will be the continuation of 30(b)(6) videotaped

5         deposition of Spine Center Atlanta, LLC, given by

6         Daniel Lincoln.

7              Will Counsel please introduce themselves and

8         any objection to the witness being sworn in

9         remotely.

10             MR. SESSIONS:  Matt Sessions here on behalf of

11        Defendants.  No objection.

12             MS. LAWSON:  Kass Lawson here on behalf of

13        Spine Center Atlanta.  No objection.

14             VIDEOGRAPHER:  And would the court reporter

15        please swear in the witness.

16        (The witness was sworn by the court reporter.)

17                        DANIEL LAWSON,

18   having been first duly sworn under oath to tell the

19   truth, testified as follows:

20                       EXAMINATION

21   BY MR. SESSIONS:

22        Q    Mr. Lincoln, good morning.  Good to see you

23   again.  My name is Matt Sessions, as you know.  I

24   represent the Defendants in a lawsuit, and I'm here

25   today to take the continued deposition of Spine Center

Page 5

1   Atlanta.  And you are, once again, being designated as

2   their corporate representative; true?

3        A     That is true.

4              MS. LAWSON:  Matt --

5              MR. SESSIONS:  Okay.  And --

6              MS. LAWSON:  Oh -- I'm sorry to interrupt,

7         Matt.  But can we just get on the record that

8         Plaintiff's Counsel was notified and is not

9         appearing via Zoom.

10             MR. SESSIONS:  Yes.  Do you want something

11        more formal than that, or do you want me to make

12        like an additional statement?

13             MS. LAWSON:  You can just make an additional

14        statement.  That's fine.

15             MR. SESSIONS:  Sure, yeah.

16             So this deposition this morning was noticed.

17        The notice was filed with the Court.  The link fur

18        the notice was sent to Counsel for Spine Center, as

19        well as Counsel for the Plaintiff, Sean McEvoy.  It

20        was scheduled by agreement, and Mr. McEvoy has not

21        appeared this morning.

22             We sent him an e-mail.  We left him a

23        voicemail.  I believe we called his cell phone and

24        his office, so he may show up at some point this

25        morning.  But we did everything we could to make

Daniel Lincoln                          November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 6

```
 1      sure that he was attending this morning.
 2              Does that work, Kass?
 3              MS. LAWSON:  That's fine.  Thank you, Matt.
 4              MR. SESSIONS:  Okay.
 5   BY MR. SESSIONS:
 6      Q    All right, Mr. Lincoln.  I took your
 7   deposition recently, and I know you've taken a couple in
 8   the past as well.  But I want to quickly just go back
 9   through the basic ground rules.
10              If you could, give me yes or no responses to
11   questions.  I can see you and hear you, but nodding does
12   not translate well to a transcript.  So I may follow up
13   and say, "Is that a yes, or is that a no?"
14   Additionally, please let me finish my long, rambling
15   question before you start to answer it.  We can't talk
16   at the same time in this formal setting.
17              If you do not understand my question, please
18   ask me to repeat it or rephrase it until you do
19   understand it.  However, if you respond to it, I will
20   assume you understood my question.  Is that fair?
21      A    Yes.
22      Q    If you needed to take a break at any time,
23   please just let me know.  I'm happy to accommodate that.
24   I just ask that, if I've asked you a question, you go
25   ahead and answer the question before we take our break.
```

Daniel Lincoln                    November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 7

1    Is that fair?

2         A    Yes.

3         Q    Okay.  And you understand that the testimony

4    you're providing today is not your personal testimony.

5    But instead, you are speaking on behalf of your company,

6    Spine Center Atlanta, LLC?

7         A    I do.

8         Q    All right.  And also you understand that this

9    is a continuation of a prior deposition, and this

10   deposition today is solely for the purpose of getting

11   additional testimony on several limited topics.

12             Is that your understanding?

13        A    Yes, it is.

14        Q    Okay.  And have you had a chance to review or

15   understand which limited topics we'll be discussing

16   today?

17        A    I have.

18        Q    Okay.  So I'm going to go through those, and

19   we'll get started.  So I'd like to start with Topic

20   No. 7, which is Spine Center Atlanta, LLC's, prior or

21   ongoing relationship with the Plaintiff and his

22   attorneys.

23             How many patients has Witherite Law Group

24   referred to Spine Center Atlanta in the last five years?

25        A    We don't keep that kind of data, such that

Daniel Lincoln                          November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 8

1    that number doesn't exist, quite frankly.

2         Q     Okay.  You testified in the prior deposition

3    that a majority of your patients at Spine Center Atlanta

4    or treating on liens or letters of protection; true?

5         A     Yes.

6         Q     And I'm sure all, or, if not most, of those

7    individuals are engaged in some form of claim or lawsuit

8    for personal injuries?

9         A     I don't know the specifics of those to

10   testify.

11        Q     Okay.  But you're telling me that Spine Center

12   does not track the referral source for what is the

13   majority of its business?

14        A     Our system and the way that we capture the

15   data when the patient comes in -- there is, perhaps, the

16   notion of referral and the notion of representation.  So

17   when the patient comes in, how they were brought to

18   us -- be it word-of-mouth or from a neighbor or an

19   employee of the practice, those kinds of things -- we

20   don't capture that in our EMR.

21             That's not captured.  That's not a data point

22   that is captured, in terms of how the patient actually

23   came to us.  So being able to go in and pull a number

24   out or look at historical data is not something that our

25   system does or that we can do a query on to do.

Daniel Lincoln                              November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 9

1              Furthermore, sometimes the data -- if we do

2       have a referral source or a representation source that

3       the patient is represented by a law firm, and thereby we

4       may be in communication with that law firm, sometimes

5       that data is put in a notes section, which is just a

6       memo, and so it's not a data point in the database that

7       can be queried specifically.  And ascertaining whether

8       or not there is some note in the system is also a manual

9       function, and it's inconsistent across the board

10      depending on who's taken that in.

11             Until the patient is being worked up, until

12      there may be some historical history with the patient

13      where it's general knowledge of what's happening with

14      that patient or where that patient is in their care and

15      the process of their care and/or in the payment of their

16      bill.

17        Q    Okay.  I believe you also testified previously

18      that Spine Center Atlanta employees -- I believe you

19      called them case managers; is that correct?

20        A    Yes.

21        Q    And their job is to coordinate between Spine

22      Center Atlanta and the representatives of your patients

23      if they have legal representation.

24        A    If they have legal representation, but also if

25      they have a case manager from an insurance company.  If

Daniel Lincoln                         November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 10

1   they have whatever and whoever because our patients come

2   from different backgrounds.  They have different forms

3   of payment or insurances, and we treat a patient that is

4   expecting to pay their bill through the settlement of a

5   lien the same way we would treat a patient who may have

6   insurance, private insurance, or some other form of

7   insurance.

8                They're all treated the same.  And those

9   people that are representing that patient, that are

10  helping that patient with paying their bill, ultimately,

11  at the end of the day, are who the case managers would

12  be speaking with, if not the patient themselves.

13       Q    I understand.  So in short, you do have

14  employees at Spine Center Atlanta, known as case

15  managers, whose job it is to coordinate with if a

16  patient has legal counsel -- their counsel; true?

17       A    True.

18       Q    So you're telling me that -- like in this

19  instance, Mr. Lowe, who is your patient, is represented

20  by Witherite Law Group; true?

21       A    Yes.

22       Q    So when a case manager at Spine Center Atlanta

23  is coordinating with Mr. Lowe's counsel, who is

24  Witherite Law Group, they have no awareness as to how

25  many other files Witherite Law Group has referred to

Daniel Lincoln                              November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 11

1    your practice?

2         A    No, they're not organized by law group.  So a

3    case manager is organized either by date of service --

4    and mostly it's by date of service, and they're working

5    through different dates of service.  Or they're

6    organized by -- it's actually by date of service, is the

7    best way to say that, is what they're working through.

8    It isn't managed by where they came from or who they're

9    represented by.

10        Q    So what I'm hearing is you don't assign

11   specific case managers to specific law firms or other

12   entities.  It's based on date of service.

13        A    Correct.

14        Q    And within your EMR software, if a patient has

15   a referral source, that appears in that notes section;

16   correct?

17        A    Correct.  It can; it's inconsistent.  Is it

18   inconsistent the way that that data is captured for

19   those people to accomplish their tasks of their jobs.

20        Q    So is there no way for you to, for example,

21   search the word 'Witherite' in your system?

22        A    I don't know what that would render, and I

23   don't know that that would be inclusive of everything.

24   So -- because it's not a data point in the EMR system.

25        Q    Does your EMR system have a search function?

Daniel Lincoln                    November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 12

```
 1        A    Yes.
 2        Q    Have you attempted to perform searches to try
 3   to gather the information requested in this topic?
 4        A    Yes.  Yes, we have done searches to provide
 5   the data that we have provided.
 6        Q    And what was the outcome of those searches?
 7        A    All the records that have been submitted to
 8   this matter.
 9        Q    I understand; let me ask a more specific
10   question.  Have you done searches to try to ascertain
11   how many files Witherite Law Group has referred to Spine
12   Center Atlanta, in the last five years, in response to
13   this topic?
14        A    Not specifically, no.
15        Q    All right.  I'd like to move to Topic No. 11,
16   which is the number of patients and percentage of
17   patients currently receiving treatment from Spine Center
18   Atlanta on a contingency or lien basis.
19             Do you know how many patients you have that
20   are treating on a letter of protection or a lien
21   currently?
22        A    Can you rephrase that, in terms of -- yeah,
23   please rephrase your question.
24        Q    Sure.  Can Spine Center Atlanta tell me how
25   many of its current patients are treating under a lien
```

Page 13

1   or a letter of protection?

2        A    Yes --

3        Q    And how many --

4        A    -- current patients.  Current patients that

5   are currently being treated.  However, let me just

6   caveat that.  That is not a piece of data that is used

7   in the care for the patient.  The provider has

8   absolutely no idea where that patient or how that

9   patient is set up in the system, in terms of their care.

10            So it would be a manual function, manual

11  function, to go and look at who's in our clinic today,

12  current patient who is in our clinic today, and what

13  their form of payment would be.  It is not a report that

14  we pull.  It's not data that we manage on a day-to-day

15  basis.  To answer your question, in terms of current

16  patient in our clinic today, how many are lien, how many

17  are self-pay, how many are some other form is a manual

18  function that we would then have to look at.

19       Q    And how would you go about performing that

20  manual function?

21       A    Would go patient by patient into their record

22  to see what notes exist, in terms of what their

23  situation is.

24       Q    So is there a data point in your EMR software

25  that describes the payment form of a patient?

Daniel Lincoln                            November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 14

```
 1      A    There's a section for, I believe, credit card

 2   or something like that.  But rephrase your question

 3   again, please.

 4      Q    Sure.  Is there a data point or a point of

 5   entry in your EMR software that describes what form of

 6   payment a patient is using for their treatment at Spine

 7   Center Atlanta?

 8      A    No.  It is an insurance company, typically, is

 9   what would be inputted or the data point that is -- the

10   EMR system is set up such that it assumes an insurance

11   provider or self-pay.  And those categories are then --

12   can have very many definitions behind them.

13          We can set up a lien as an insurance company

14   because then it's also tied to billing, and there's just

15   certain functions that are very static.  They're very

16   specific to the healthcare industry and not specific to

17   processing a lien or following up on a lien.  So we will

18   then modify or we will input data into a data field,

19   perhaps, that is an unintended piece of information than

20   what the EMR may be looking for.

21          So it's based on an insurance company.  I just

22   don't know if that's -- is sufficient for your question.

23      Q    So what I'm hearing is there's a data point or

24   entry in your data field where you can either put

25   insurance company or self-pay; right?
```

Daniel Lincoln                                    November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 15

1       A    Yes, there -- yeah, go at that.

2       Q    Are all of the liens or letters or protection

3    categorized under one or two -- one either/or -- sorry.

4    Let me restart.  I confused myself.

5            If a patient is treating on a lien or a letter

6    of protection, are they always categorized as one of

7    those two categories -- either insurance or self-pay?

8    Or can a lien or letter of protection be either of

9    those?

10      A    Could be either.

11      Q    Have you done any -- well -- let me ask you

12   this way:  Have you made any attempts to try to

13   ascertain how many of Spine Center Atlanta's patients

14   are currently treating on a lien?

15      A    Yes.

16           MR. SESSIONS:  All right --

17           THE WITNESS:  And the answer I was --

18               (Speaking simultaneously.)

19           THE WITNESS:  Or -- go ahead.

20           MR. SESSIONS:  Sean is calling me.  So let

21       me -- let's pause the deposition.  I'm going to

22       answer his call.

23           VIDEOGRAPHER:  The time is 10:38 a.m.  We're

24       off the record.

25                   (Off the record.)

Page 16

1           (Mr. McEvoy joined the deposition.)

2           VIDEOGRAPHER:  The time is 10:43 a.m.  We're

3       on the record.

4    BY MR. SESSIONS:

5       Q    All right, Mr. Lincoln.  We were in the middle

6    of the question and answer, so I'm just going to repeat

7    the question and then I'll let you complete your answer

8    this time.  I had to interrupt you before; I apologize.

9           Has Spine Center Atlanta done a search to try

10   to determine how many of its current patients are

11   treating under a lien or letter of protection?

12      A    Yes, and the results of that -- it's

13   impossible for us to ascertain in the manner that you're

14   asking.

15      Q    Okay.  When you tried to perform that search,

16   what were the results or what happened?

17      A    Our system is unable to come up with an answer

18   that -- simply because that's not how our data is

19   stored, and there is not a data point in the database to

20   do so.  So it is, from that perspective, an impossible

21   task to come up with all of the patients that have been

22   handled on a lien for the last five years or something

23   like that.

24           Furthermore, we have a couple of different

25   systems.  And we've had system migrations from one EMR

Page 17

1   to another EMR, and, therefore, there are also

2   differences within each of those.  So it becomes just an

3   impossible task.

4        Q    What is the name of the EMR software you

5   currently have?

6        A    Currently, we use a system called CareCloud.

7        Q    Were you using Care Cloud in 2019?

8        A    No.

9        Q    What EMR were you using in 2019?

10       A    That EMR system was called Centricity.

11       Q    When did you stop using Centricity?

12       A    I believe it was beginning of 20- -- no -- mid

13   2020, so it might have been around March.

14   February/March, we started the migration 2020 into

15   CareCloud and we ran two systems simultaneously for a

16   period of time as well.  But that was just for our

17   internal purposes.

18       Q    Did you have any other EMR software in between

19   Centricity and CareCloud?

20       A    No.

21       Q    Okay.  What are those other two systems that

22   you're referring to?

23       A    No, it was just Centricity and then CareCloud.

24       Q    Oh.  At one point, you were running them both.

25            Is that what you're saying?

Daniel Lincoln                                    November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 18

1          A     Yeah, yeah, yeah.  Yes, through the transition

2     internally, we would run both to see that they were

3     rendering like function.

4          Q     I understand.  In CareCloud, are you able to

5     look and see the total number of active patients you

6     have?

7          A     Yes, we can see active patients -- well, I

8     take that back.  We can see patients that are coming in,

9     and we should define active.  So let me just ask you to

10    define active -- what you mean by "active".

11         Q     Sure.  Let me just ask a better question.

12               Can Spine Center Atlanta, right now, see the

13    total number of patients it's currently rendering

14    treatment to?

15         A     On a daily basis in the schedule, we can see

16    who's coming into our clinic or we can see who is

17    scheduled in the clinic.  So active would be somebody --

18    I would call "active" somebody that has an appointment

19    to see a care provider.  So that is based in the

20    calendar function where we can see who has an

21    appointment.

22         Q     So Spine Center Atlanta can see the total

23    number of patients with an appointment currently

24    scheduled?

25         A     Yes.

Daniel Lincoln                    November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 19

1        Q     When a Spine Center Atlanta patient signs a

2    letter of protection or a lien document, that document

3    is then uploaded or saved in their file; true?

4        A     That is true.

5        Q     But there is no way for you to perform a

6    search of the total number of patients with appointments

7    currently scheduled and then filter that by patients who

8    also have a letter of protection or a lien document

9    uploaded to their file?

10       A     Not in an electronic fashion.  So to come up

11   with that number, we would have to go into each patient

12   record.  And then we would either have to look at the

13   document to verify what that document is -- because

14   since it's uploaded into the system, it's saved as a

15   document.  So we would have to manually look at the

16   document to see what it is or something like that.

17              And then it depends -- you'd have to look at

18   each one to see how it was input into the system and

19   whether or not data was even captured at the point an

20   appointment was made.  Sometimes that data isn't

21   captured until down the road, second or third

22   appointment, just depending on the situation with that

23   payment as care for that patient evolves.

24       Q     I understand.  And help me understand how

25   difficult or easy that would be.  How many manual files

Daniel Lincoln                    November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 20

1    would you have to look through?  How many patients are

2    there currently?

3         A    I haven't specifically looked at the schedule.

4    But it could be, you know, in a given week or a given

5    month, it could be several hundred and also because

6    they're coming in in different stages of care and in

7    different clinics.

8              So we may have, you know, several clinics

9    running if it's a follow-up; if it's an intake; if it's

10   physical therapy; you know, if they're being prepped for

11   surgery -- those are different areas in different

12   clinics within the practice where the patient would have

13   then that touch point of schedule and the touch point of

14   intake of some information.

15        Q    If you were to try to go about gathering that

16   information by manually looking through each file and

17   making those determinations, do you have any idea how

18   long it would take you to complete that task?

19        A    No.  Just the task -- I'll just say just the

20   tasks in migrating to CareCloud and working in the data

21   in CareCloud and inconsistencies or just ensuring that

22   data that has come over from Centricity and going

23   through that process -- I can tell you is extremely

24   time-consuming where we've hired tempts to come in and

25   help, et cetera, because the day-to-day operation and

Daniel Lincoln                    November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 21

1    just the day-to-day volume of work and the time that it

2    takes to gather data since even taking care of a

3    patient, sometimes, is largely a manual function.

4            It can be very time-consuming simply because

5    following up to ascertain certain data may require

6    making a phone call, getting a hold of somebody, they

7    don't answer.  That goes over a period of a couple of

8    days or longer, and the whole process is thereby very

9    tedious and time-consuming.

10           So to ascertain your question, or the answer

11   to your question, depends on then the type of data that

12   would be required, who has the data, how we get a hold

13   of it, et cetera.  And it can be very tedious and

14   time-consuming.

15       Q    And I just want to make sure I understand.

16   CareCloud is the only software that Spine Center of

17   Atlanta is currently using to manage its patients?

18       A    Correct.

19       Q    All right.  I want to jump to Topic 18, which

20   is the average percent recovered on liens or letters of

21   protection for the past two years.  When we discussed

22   this topic last time, you told me that Spine Center

23   generates documents -- I believe you called them

24   ledgers -- on a daily and monthly basis.

25           Is that correct?

Page 22

```
 1      A    If that was my testimony then, yes.  We should

 2   define "ledgers" and define "daily" and "monthly", you

 3   know, depending on what your question is or the

 4   objective is.

 5      Q    Sure.  So in this context, we are trying to

 6   determine, essentially, what percent of your bills do

 7   you actually recover when you treat someone on a lien or

 8   a letter of protection.  So are there ledgers that

 9   reflect that information that are generated?

10      A    No, there are not.  There are not.

11      Q    Okay.  When we discussed this before, you told

12   me that there are documents which show Spine Center's

13   revenue or the amount billed and contractual adjustments

14   as well; true?

15      A    I think we need to define "contractual

16   adjustment".  So if we could, maybe clarify my

17   understanding of contractual adjustment and your

18   understanding of contractual adjustment.  Then we may

19   shed some light on the answer I provided and your

20   understanding, or what you're trying to ascertain

21   through that question.

22      Q    So I'll tell you my understanding, and I would

23   love to hear yours.  My understanding is that a

24   contractual adjustment is the amount that the bill was

25   reduced by.
```

Daniel Lincoln                      November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 23

1        A    And that is not mine.

2        Q    Okay, what is yours?

3        A    A contractual adjustment and how we use

4    contractual adjustment is in an accounting sense of

5    definition.  The contractual adjustment is the amount --

6    the difference from what we may bill, so our billed

7    charge, and what the contract that we have with that

8    provider and what they may reduce our charge to that we

9    would expect to receive.

10            So, for example, I'm in network with Blue

11   Cross Blue Shield.  Hypothetically, my billed charge to

12   Blue Cross Blue Shield is -- because I bill all patients

13   the same, my chargemaster submits a bill to them for

14   $800.  However, my contract with Blue Cross Blue Shield,

15   for those CPT codes, only allows a certain amount to be

16   paid.  So that is what we call a contractual adjustment

17   based on -- and it's nomenclature.

18            It's based on and the difference from -- of

19   our billed charge is to what we could expect to receive

20   from a contracted provider; call it, hypothetically,

21   Blue Cross Blue Shield.  These are all hypotheticals,

22   and we use this in our accounting sense and for our

23   profit and loss statement.

24            So in our profit and loss statement, we have a

25   line, total revenue.  Total revenue represents our

Page 24

1   billed charge, and that billed charge comes from our

2   chargemaster where all patients or charged the same.

3   The contractual adjustment is an amount that we

4   calculate on our own, historical, over time what we

5   typically have been receiving, cash in the door.  We

6   compare the cash in the door to the billed charge and

7   that number changes every single month.

8              And so we will create an average number for

9   our contractual adjustment to reduce our total revenue

10  to a line, which is the difference from our billed

11  charge and the contractual adjustment, to see how much

12  cash we expect to be coming in the door such that our

13  cost structure underneath that is either plus or minus.

14  And then we'll know we're either not doing a good job

15  collecting, or our cost space is too high because we're

16  not covering all of our expenses.

17             So it's an aggregate; it is not by patient.

18  Or in that instance, what I was referring to and how we

19  look at this is in, all the total billed charges and

20  cash in the door and what those percentages are

21  historically over time.

22             And then we will change that (distorted) on an

23  ongoing basis in our actual, see if we're close to what

24  our budget was -- what we set up as a budget just to see

25  what we expected -- or that number will change from time

Daniel Lincoln                                    November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 25

1    to time as that number and that average changes.

2           So, for example, for the contractual

3    adjustment in a given day today, we'll go back and look

4    three to six months.  We'll look at an average to see

5    (distorted) until the end of the year, in terms of what

6    we expect our cash to be, to anticipate do we have

7    enough working capital to fund the practice.

8           The contractual adjustment, we do not look at

9    on a patient-by-patient basis or what that reduction is.

10   And our collection department task is to collect a

11   hundred percent of billed charge and get as close to a

12   hundred percent of billed charges as they can.  Whatever

13   the circumstance is in their negotiation of that claim

14   of whenever the settlement might be, is what that is and

15   it goes then into the total.  The total and those

16   aggregates are what we're looking at.

17      Q    I understand.  I appreciate you telling me all

18   that.  When you are making those calculations, are you

19   including, on the aggregate, patients who treat on a

20   lien or a letter of protection?

21      A    We're looking at all patients where a claim

22   has been settled or paid and where cash has hit the

23   account -- the books.  And, for example, where it's very

24   complex is if we're looking in a given month of billed

25   charges.  The billed charges in a given month are actual

Page 26

1    billed charges for that month.  There is a time frame

2    for that specific.

3             The contractual adjustment, or cash in the

4    door, is nowhere near to a specific time frame for that

5    given month.  Those could be claims from two years ago.

6    It could be, you know, something that we've been

7    collecting for, you know -- or trying to collect for a

8    long time.  It is all over the board, and that's why we

9    are -- on a regular basis, we will look at that number

10   to ascertain that we're on track or to make sure that

11   we're collecting what needs to be coming in the door to

12   keep the practice in business and open.

13             But those claims that are actually being paid,

14   and what the basis is of those numbers, have a time

15   period that is all over the map.

16       Q    I understand.  What is your current average

17   contractual adjustment amount?

18       A    It hovers at around 30 percent.  So if a

19   hundred percent is our billed charge, we will take

20   30 percent of that off.  Just from a raw calculation,

21   that's the cash that we expect to come in.  And it can

22   vary, and it does vary.

23             We may have to go lower, seasonality, in terms

24   of when payments come in, or the seasonality simply of,

25   you know -- COVID has put all kinds of different

Page 27

1    parameters in here that we've tried to work through as

2    well.  So that's -- but I would say about 30 percent.

3        Q    And I want to make sure I understand you.

4            Are you telling me that you expect to recover

5    30 percent of the billed amount, or you expect to

6    recover 70 percent of the billed amount?

7        A    70 percent of the billed amount.  We expect to

8    recover a hundred percent.  Then we will manage, on

9    average, what is coming in.  But that does not mean that

10   all claims are paying at 70 percent or that's what our

11   negotiated rate is.  It's an average.  So some may be

12   paying a hundred percent of billed charge; some might be

13   only 25 percent.

14           They can be across-the-board, just depending

15   on that (distorted) or that patient for that file.  Some

16   are zero pay, so we also have to take into account the

17   zero pay.  So you can see, that average across many

18   patients, it can be all over the board.

19       Q    So as Spine Center Atlanta is trying to

20   determine the amount to bill or that they're going to

21   charge, you are looking at the -- I guess whatever the

22   current average contractual adjustment amount is.  And

23   then, depending on how that number trends, that may

24   affect how much you bill for a service; true?

25       A    It is one factor that comes into play, and we

Page 28

1    do update our chargemaster from time to time.  And

2    actually, in one instance from 2020 to 2021, the basis

3    of the CPT codes that we use to establish our

4    chargemaster -- some of those CPT code charges in the

5    basis actually went down.

6            And then that causes certain -- when you're

7    looking at historical data to current data, then it

8    renders inconsistencies -- or what would appear to be

9    inconsistencies -- in what our charges are, where we

10   then have to go back and ascertain what the specific was

11   that may have caused something like that because we also

12   have and manage facility charges, professional charges.

13           So we have a surgery center that is a

14   practice, we have clinics that are practices, and we

15   have DME or ancillary items, equipment or supplies that

16   are also a charge function in the chargemaster.  So

17   those things then can change from time to time.  And as

18   we're learning and as I am learning, our EMR systems

19   then pull data, in different ways sometimes, that we

20   then have to go back and double-check.

21       Q    Can you tell me what the average contractual

22   adjustment amount was for 2020.

23       A    On an aggregate basis for 2020, I can tell you

24   what our billed charge was and what we collected in a

25   given month.  And thereby give you an actual contractual

Page 29

1      adjustment, which I call as I've defined.  So what that

2      difference was from our billed charge was and what came

3      in the door on an aggregate basis.

4           Q     Okay.  And what was that number for 2020?

5           A     For 2020, I don't have that number at the top

6      of my head.  But it's certainly something I can get for

7      you.

8           Q     All right.  I want to move now to Topic 13,

9      which generally is the bills issued to Mr. Steven Lowe.

10     So let me see if I can share screen -- okay.

11               Mr. Lincoln, can you see my screen?

12          A     Yes, I can.

13          Q     So after we took your deposition previously,

14     Plaintiff's attorney provided a new or updated bill for

15     Mr. Lowe.  Were you aware of Spine Center issuing a new

16     bill in this case?

17          A     A new bill, or this is a bill out of the

18     CareClub system with the historical charges.  So just an

19     update of this.

20          Q     I guess -- let me rephrase my question.

21               Were you aware that Spine Center had gone in

22     and made changes to Mr. Lowe's bill since the last time

23     I took your deposition in this case?

24          A     I'm aware of that now.  I was not aware of

25     that before.

Daniel Lincoln                          November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 30

1      Q     Okay.  Have you had a chance to review this

2    bill that was issued -- it looks like Monday, October

3    18th of 2021?

4      A     I have reviewed this bill and compared certain

5    items.  Not every single every line item, but I have

6    reviewed certain items to the Centricity bill as well.

7      Q     Okay.  Do you have an understanding of why

8    Spine Center decided to make changes to this bill in

9    October of this year?

10     A     Yes, I do, and can you scroll to the bottom.

11   What's the total of this bill?

12     Q     Yes, glad to do that.

13     A     Okay, okay.

14     Q     So what is your understanding of why Spine

15   Center Atlanta decided to make changes to this bill in

16   October of this year?

17     A     So the Centricity -- or the CareCloud

18   system -- and when a bill like this is pulled in the

19   CareCloud system, it doesn't pull the historical

20   chargemaster -- which we've now learned.  It will pull

21   the current chargemaster.  And therefore, if you have a

22   bill from the past, like in this case in Centricity, and

23   we're looking at something that had migrated from

24   Centricity to CareCloud, the basis of the chargemaster

25   may be different when you're pulling the report.

Daniel Lincoln                    November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 31

1          And in this instance, as I described before

2     from 2020 to 2021, the -- and this was pulled in

3     October 2021, I believe.  The chargemaster actually, for

4     certain CPT codes, actually had gone down.  So our

5     chargemaster basis by which our chargemaster is

6     created -- some of these CPT codes and that basis were

7     actually reduced.

8          So when somebody went in to pull this out of

9     CareCloud, it provided and it gave a different number

10    than what was in Centricity.  Now, I compared those

11    charges that were in question with June and August with

12    the 63685 and 63650.  Largely, I believe they were the

13    same in both systems.  So there were others CPT codes,

14    perhaps, that were different that rendered that

15    difference.

16    Q    So are you telling me, essentially, that when

17    changes are made to CPT code amounts in the

18    chargemaster, it will just go through and automatically

19    update any outstanding bills that have those CPT codes

20    on them?

21    A    No.  It's function that when you actually go

22    into that patient account and print or call up a -- in

23    this case, a bill for the first time, it will then load

24    that current chargemaster to that patient account.  And

25    it sets it up that way, is what I'm learning from

Daniel Lincoln                                November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 32

1    CareCloud.  That's their default, if you will.

2          And we're in the process of working with them

3    to change that so we don't have to manually go in and

4    correct.  It isn't that we're changing the bill; we're

5    correcting the bill to the historical data that exists,

6    or the correct data if it's pulling incorrect data.

7    Q    So is the amount that is reflected on this

8    bill, which is $195,403.48 -- is that the total amount

9    for Mr. Lowe's care?  Or is it the one reflected on the

10   previous bill, which was approximately $203,000?

11   A    We've been working on that, and I will testify

12   right now that is in process since all of this has come

13   up.  And I've been trying to ascertain the answer to

14   your question.  My answer is the correct bill is 203

15   from what Centricity was.

16         In producing this and supplying this with the

17   195, where the clerk believed this to be correct and

18   those changes for the CPT codes or of this, the clerk

19   believed was correct.  However, at that time and when

20   that clerk pulled it, it was unbeknownst to her or to us

21   that the CareCloud system is pulling a current

22   chargemaster.

23         And when we learned and we looked at the

24   chargemaster, then we also learned that the chargemaster

25   was not our intended chargemaster.  And therefore, I

Daniel Lincoln                      November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 33

1    would testify that this is an incorrect number.  And I

2    would go back to the historical system that we had,

3    Centricity, and I would testify that that number is the

4    correct number at the time Mr. Lowe being cared for.

5           We're still in process, and we are working to

6    make sure that our numbers are reflected correctly to

7    the charges that we're intending.  And that is something

8    that is still in process.

9       Q    Okay.  So for the purpose of our discussion

10   today of Mr. Lowe's bill, we should be looking at the

11   older bill that we were looking at before in this case

12   and not this more recently issued one?

13      A    That is correct in Centricity.  And, quite

14   frankly, that is even more correct.  That's the system

15   that was being used when Mr. Lowe was being cared for,

16   and there hasn't been some migration of system or

17   something like that.  I believe I would testify that is

18   the most accurate and the best way for us to ascertain,

19   A) his care and his treatment and continuum of care and

20   the charges therefore.

21      Q    Okay.  All right.  Here is the patient ledger

22   from before, and I'll represent to you that your Counsel

23   told me that this was the better document for us to look

24   at as we were discussing charges today.

25      A    Yes, correct.

Page 34

1      Q    So I'm going to go -- I'm going to navigate to

2   the ones that we're focused on.  Do I need to zoom this

3   in a little more, or can you read it?

4      A    No.  At this point, I almost have this

5   memorized.  So I just -- I've seen it so much.  So...

6      Q    That's good news.

7      A    I recognize it.

8      Q    Okay.  So the first one I'd like to discuss is

9   the item billed on June 1, 2020 for codes 63650, and it

10  looks like the amount was for $24,944.01.

11          Is that correct?

12     A    That is correct.

13     Q    Okay.  There's only one code and one charge

14  for this code.  Is that divided between a facility fee

15  in a professional fee, or is that both fees combined?

16  What does that represent?

17     A    No, they are separate.  One is a facility fee.

18  And where you see the Atlantic [sic] Ortho Spine Surgery

19  Center -- so where it says orthopedic over -- right

20  after the date --

21     Q    Yes?

22     A    That is the clinic charge, so that is the

23  professional fee.  The charges are different for CPT

24  codes for a clinic or a professional fee and for the

25  facility fee.  And in this instance, under the

Page 35

1   orthopedic, that is the professional fee.  Below

2   Atlanta, I believe -- that is the facility charge.

3        Q    So the very next entry on this bill, which has

4   the same CPT code but it says Atlanta Orthopedic as

5   opposed to Orthopedic & Spine, the Atlanta Orthopedic is

6   the facility fee charge.

7             Is that what you're telling me?

8        A    Correct.

9        Q    Okay.  So let's go back to the first charge,

10  which I guess would be the professional fee totaling

11  $24,944.01.

12            How is the amount of that charge determined?

13       A    We have a basis for our CPT codes for this

14  procedure, and it's based on that.  And it is the PMIC

15  guidebook that we use as our basis for determining our

16  charges.  Then other factors come in, that we add to

17  what the PMIC basis is, and that's how we determine our

18  charges.

19       Q    Does the PMIC guidebook provide one amount for

20  each CPT code, or was there like a spectrum of amounts

21  for each code?

22       A    Spectrum.  There's a spectrum of amounts and

23  percentiles.

24       Q    So for this code, 63650, where on the spectrum

25  of PMIC of the PMIC guidebook does Spine Center fall in

Daniel Lincoln                                November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 36

1  choosing this amount?

2        A     On this one, I believe this it's between 90th

3  and a hundred percentile on that spectrum.

4        Q     And how did Spine Center go about choosing

5  that percentile as opposed to any other?

6        A     Well, it's not a function of necessarily

7  choosing that percentile.  It's a function of ancillary

8  or additional charges that we would put in or factors

9  that we would put in.  And then, when we come up with

10  that number of what we want to charge for that CPT code,

11  we'll go back and look and see where we are in terms of

12  the percentile so that we are staying within a usual and

13  customary amount.  And I should also say that those

14  percentiles are based on usual and customary.

15              So these percentiles in the spectrum and the

16  basis -- the basis may be something, you know, like

17  Medicare or some very low basis.  And then the

18  percentiles that come up are for usual and customary.

19  We attempt to be within a usual and customary of that

20  spectrum from somewhere to 50 percentile to a hundredth

21  percentile on our CPT codes, and it just depends on

22  where and what is occurring to the care that we provide

23  of where we land.

24              Each CPT code can be different.  It's not

25  something that is, across-the-board, all the same.  So

Case 1:20-cv-05224-CAP   Document 160   Filed 02/05/23   Page 37 of 76
Daniel Lincoln                    November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 37

1   that's also a bit of a manual process, going in and

2   calculating that per clinic charge, professional charge,

3   as well as facility charge.

4       Q    So as I understand it, Spine Center Atlanta

5   will, using multiple factors, calculate a charge for a

6   CPT code and then consult the PMIC guidebook to see

7   where they fall on the spectrum?

8       A    That's correct.

9       Q    But you do not necessarily rely on the PMIC

10  guidebook as a starting place or even determining what

11  you'll charge?

12      A    No, that is our basis.  I mean, the basis --

13  we do use that number and then move from there.

14      Q    Okay.  You told me you guys try to be between

15  the 50th and 100th percentile; true?

16      A    Of usual and customary, correct.  I'm saying

17  the ones that I've reviewed and looked at, that is for

18  those charges.  That is where we will fall.

19      Q    Are you aware of Spine Center every reducing

20  it's proposed charge for a specific CPT code to fall

21  within that spectrum of the PMIC guidebook?

22      A    Yes.

23      Q    So when Spine Center is determining what is

24  usual and customary charge for a specific CPT code, is

25  it relying on anything other than the PMIC guidebook?

Daniel Lincoln                          November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 38

1       A    Yes.

2       Q    What else does it rely on to make that

3   determination?

4       A    There are factors, for example, like the

5   quality of care; the provider.  Our facility is a

6   private facility.  In terms of the patient's experience,

7   they're not in a large hospital with a couple of people

8   in their room.  It's very private.  It's a much

9   different atmosphere.

10          And then -- so those are just a couple of

11  examples of factors that do come to calculate our CPT

12  code and, ultimately, our charges.

13      Q    I'm not super familiar with the PMIC

14  guidebook.  Do they issue a new edition every year, or

15  how does that work?

16      A    Yes, they do.  It's an annual book.  It's a

17  thick book.

18      Q    I can imagine.  And so does Spine Center

19  maintain different chargemasters for different types of

20  payments for patients?  For example, is there a

21  different chargemaster for a letter of protection

22  patient as opposed to one treating on insurance?

23      A    No, there's one chargemaster.

24      Q    So, for example, the amount that Spine Center

25  would bill to Cigna for 63650 is the same that was

Daniel Lincoln                              November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 39

1    billed to Mr. Lowe in this case?

2         A    That is correct.

3         Q    Looking at the entries for June 1, 2020, I do

4    not see where Spine Center billed Mr. Lowe for

5    installing the generator or the battery pack for his

6    stimulator.  Would you agree that that's not here?

7         A    Unfortunately, yes.

8         Q    Do you know why that is?

9         A    That was an error.  It was not billed for, so

10   that battery pack was not reimbursed.

11        Q    Okay.  While we're discussing battery packs,

12   let's move to the August 3rd entries.

13        A    Let me state, too, the June entry -- to be

14   understood, that was a temporary placement for this.

15   And in August, it's the permanent.  So that's another

16   factor.  But I believe, in August, the battery pack was

17   not billed either, which is a function of -- this was a

18   new service that was being rendered at the time, and it

19   was being set up.  So just so you're aware.

20        Q    So looking at these August 3rd entries,

21   there is code of 63685 -- which is placement of a spinal

22   pulse generator.  My understanding is that's the battery

23   pack; correct?

24        A    Yes, that's my understanding as well.

25        Q    Okay.  And so that was billed for in the

Page 40

1    amount of $5874.11?

2         A    Correct.

3         Q    Okay.  So a battery pack was billed for the

4    implantation of the permanent device in August; true?

5         A    Yes, that's true.

6         Q    Okay.  And just like the June entries above,

7    one of these August entries is the professional fees and

8    the other is the facility fee; true?

9         A    That is true.

10        Q    The prices for -- now, I understand that there

11   are two units for the stimulator electrode arrays.  But

12   even dividing these by two, the numbers are different

13   from what he was charged in June for implantation of his

14   temporary stimulator.

15             Do you know why those amounts are different?

16        A    I believe there was a correction or a change

17   in the chargemaster from June to August, and there were

18   two units.  There are two paddles per unit, so he had

19   four paddles, I believe, implanted; hence the two units.

20        Q    And so it's your understanding that the

21   difference in price is just based on the fact that Spine

22   Center's chargemaster changed between June and August

23   of 2020?

24        A    Correct, for that line item or for those

25   implants.  That does occur as well, just in general,

Daniel Lincoln                                    November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 41

1    from time to time when we have increases in certain

2    supplies, implants.  Then the chargemaster will change

3    at that time for that line item.  That does occur.

4        Q    Okay.  I believe you mentioned, a second ago,

5    that installation of spinal stimulators was a new

6    service for Spine Center Atlanta at the time this

7    procedure was done.

8        A    Well, in this instance, or as I was reviewing

9    with some of our clerks what was happening or what the

10   basis of this bill was, that's what was articulated to

11   me.  I don't know if that meant that it was the

12   particular unit or the constellation of that unit or

13   such.

14              MR. SESSIONS:  And, Madam Court Reporter, I

15          don't know if we're continuing exhibit numbers from

16          the previous deposition or not.  But I would like

17          to tender that bill, we were just discussing, as

18          the next exhibit -- whatever that number is

19          supposed to be.

20           (Defendants' Exhibit No. D-3 was marked for

21                       identification.)

22   BY MR. SESSIONS:

23       Q    Mr. Lincoln, continuing on in regard to

24   Mr. Lowe's bills, so in 2019 and 2020, absent changes

25   over time in Spine Center's chargemaster, it's my

Daniel Lincoln                    November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 42

1    understanding every patient would have been billed the

2    same amount for those two CPT codes, 63685 and 63650.

3            Is that correct?

4        A    That is correct.

5        Q    How many spinal stimulators did Spine Center

6    Atlanta install in 2019 and 2020?

7        A    That's also a question I don't have that data

8    for you.

9        Q    Is it possible for Spine Center to determine

10   how many stimulators were installed in 2019 and 2020?

11       A    I don't know the answer to that.  That's

12   something that I could certainly look into, and I think

13   we can.  If I go ask the question, then there may be

14   reasons that we can't.  But I would think that I know

15   how many stimulators we bought in, how many were

16   implanted, and that's where I would go for that is --

17   that's how I would ascertain that.

18           I have not asked that question, but that is

19   something that I could ask and that's something that we

20   could probably supplement.  And that would be the basis

21   by which I would obtain that data:  Who are suppliers,

22   how many did we buy, how many did we implant, or how

23   many were defective or had an issue and were not

24   implanted.

25       Q    So in 2019 and 2020, you were still using the

Daniel Lincoln                    November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 43

1    Centricity system for billing?

2        A    Correct.

3        Q    In Centricity, are you able to search for

4    bills that include a certain CPT code?

5        A    I don't know the answer to that, in terms of

6    how accurate that maybe across all patients and I tend

7    to think no.  But again, I would want to clarify that

8    specifically to your question to give you the correct

9    information for that CPT code.  I'm aware unaware, as I

10   sit here, that we could do that across all patients for

11   that specific CPT code.

12       Q    So as we sit here today, you are unsure if

13   Spine Center Atlanta would be able to search its records

14   for every bill in 2019 and 2020 that issued CPT codes

15   63650 and 63685?

16       A    Yes, that's correct.  I could ask the

17   question; they could do the search.  The data could be

18   inconsistent, or the answer that I would get back from

19   them is, "This is what we got, but we know that's not

20   correct, and this is why," or, "This is what we would

21   have to do."

22            When we do queries like this, to the database,

23   is when we learn the inconsistencies or the limitations

24   of the database or that function and how the data is

25   captured and stored.  So it isn't that we couldn't do

Page 44

1    the search; they can go and search whatever you may ask.

2    What comes back might not be what you're looking for or

3    a correct answer to give you and say this is correct.

4              And, thereby, I get the answer, "That's

5    impossible without doing it this way or without doing it

6    that way," which tends to be impossible just from a work

7    perspective, manual, and time.

8         Q    Okay.  But to your knowledge, Spine Center

9    Atlanta has not attempted to perform that specific

10   search I just discussed in order to gather that

11   information?

12        A    No, I believe many searches have been done.  I

13   don't have a list of all the searches.  But as they've

14   been researching and attempting to do and pull data in

15   this case, there have been many attempts to ensure that

16   we're providing the information that has been requested.

17        Q    And so it sounds like, from those attempts,

18   there were results generated from those searches.

19        A    I specifically haven't reviewed those or

20   looked at those.  I looked at the very specific

21   questions that have been given, which is where I've

22   looked and what I focused on.

23        Q    Okay.  Are you willing to go in and try to

24   determine how many spinal stimulators Spine Center

25   Atlanta implanted in 2019 and 2020?

1        A     Yes.

2        Q     Obviously, I don't know the ins and outs of

3    Spine Center's practice.  But I would gather that that

4    is one of the less common procedures performed at your

5    facilities; true?

6        A     It's an interesting question; I don't know.

7    We do have a pain management section where injections

8    and spinal cord stims are implanted.  It would be an

9    interesting result for me also to look at, so I'm

10   curious myself as to how many we did.  And their opt for

11   a spinal cord stim or an injection and what, you know --

12   what remedy that provides for a patient in trying to be

13   conservative and avoid surgery, quite frankly.  So I'm

14   curious of that myself.

15       Q     Okay.  Earlier, we were discussing aggregate

16   or average contractual adjustment amounts on your bills.

17   Is it possible to determine an aggregate or average

18   contractual adjustment amount for these specific CPT

19   codes, 63685 and 63650 for 2019 and 2020?

20       A     If you could rephrase the question, or there

21   was -- so the contractual adjustment doesn't pertain to

22   the bill.  The bill is the billed charge.  The

23   contractual adjustment is an aggregate amount from our

24   total billed charges, to what we are historically

25   collecting in the past, to ascertain what we expect to

Daniel Lincoln                                                November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 46

1    collect in the future.  So in that regard, it's not

2    based on a bill.

3              So if you could, rephrase your question

4    because I believe you said "your contractual adjustment

5    from your bill or from the bill".

6         Q    Sure.  Is it possible -- or let me ask it this

7    way:  Do you know the average contractual adjustment

8    amount for these specific CPT codes, 63650 and 63685,

9    for 2019 and 2020?

10        A    The answer is no.  And if you look at our

11   ledger, the ledger and what we collect is on a total

12   basis.  It's not on a line by line basis and the CPT

13   codes.  So the total charge goes out.  When the payment

14   comes in, that payment is then applied to the patient's

15   account in total and it's not on a line by line basis.

16             So I don't have aggregate or specific data to

17   the CPT code to apply some discount or what we accepted

18   for that specific CPT code because we're collecting on a

19   total bill.  And typically, it is also down the road, so

20   when we're settling or when we were collecting

21   depending.  And so we're just looking at aggregate total

22   amounts.

23        Q    So even when insurance companies are providing

24   payment or reimbursement for bills, they do not give

25   reductions on a line by line or CPT code basis?

Veritext Legal Solutions

Daniel Lincoln                    November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 47

1      A     Sometimes they do, and we will then appeal

2    some of those line by lines that they deny.  But when we

3    book the payment into the patient account, we book that

4    as a total.  We don't book it line by line.

5      Q     Okay.  So as we sit here today, you can't tell

6    me how much Spine Center Atlanta, on average, accepted

7    in satisfaction of its bill issued in 2019 and 2020 that

8    contained the CPT codes 63685 and 63650?

9      A     I can't tell you that today.  I can tell you,

10   in 2019 or 2020, what our total billed charge was and

11   what our cash in the door was for that given year or for

12   a given month that we booked into our accounting system

13   to generate our profit and loss.

14     Q     Assuming that the Centricity system is able to

15   go in and locate patients who were billed these specific

16   CPT codes, you would then be able to look at the amount

17   accepted and then determine that percentage; true?

18   Assuming the bill has been paid.

19     A     Assuming the bill's been paid, I certainly can

20   look at that patient and see what their total billed

21   charge was and then what that bill was.  But I'm just

22   trying to think if it's two different systems.  But

23   theoretically, I could be able to look at the patient

24   and see what their total charge was and what the total

25   payment was.

Daniel Lincoln                        November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 48

1        What I don't know is if I'm capturing all of

2   the patients with those two CPT codes.  That's what I

3   don't know, and -- yeah.

4        Q    Even if you can't confirm that every patient

5   is captured, it would still be able to provide a data

6   point for a majority -- or at least some of the

7   patients; true?

8        A    That would be a question I would ask IT, what

9   they are coming back with or what that quantifier might

10  be.  That would be something that I can further go back

11  and ascertain specifically.

12       Q    So I'm pretty sure I know the answer, and I'm

13  pretty sure you're not going to be able to give me this

14  information today.  But I want to identify to you the

15  information that I'm looking for so that we can have an

16  understanding of what additional information we need;

17  okay?

18       A    Okay.

19       Q    So I would like to know how many patients were

20  billed for spinal stimulators, installations spinal

21  stimulators in 2019 and 2020.  And I know we've already

22  discussed what you would have to do to determine the

23  information.  And then, from whatever data comes up from

24  those searches for those patients whose bills have been

25  paid, I would like to know the average amount accepted

Daniel Lincoln                      November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 49

1    to satisfy the total bill involving those two specific

2    CPT codes, 63650 and 63685.

3             And then, if possible, I would also, out of

4    those results, like a breakdown of whether the patient

5    was self-pay or treating on a letter of protection or

6    treating with health insurance.  And as I understand it,

7    you can't tell me, as we sit right now, the answers to

8    any of that information; true?

9         A    That's true.

10        Q    And you're unclear, as we sit here right now,

11   exactly how difficult answering those questions would be

12   or what data would be turned up when you look.

13        A    That's right.  You're exactly right; I mean,

14   it could be months -- or just of manual labor.  I just

15   don't know.  But it's something that obviously -- it's

16   something I can ask, and I can ascertain, you know, what

17   is involved, what does exist, or, you know, what that

18   situation is.  And we can coordinate that with Kass.

19        Q    Okay.  The last portion of the billing that I

20   have questions about is in regards to the actual medical

21   equipment that was installed in Mr. Lowe.  Do you know

22   the brand or model of the hardware that was installed in

23   Mr. Lowe for surgery in August of 2020?

24        A    I don't know that specifically.  But I'm sure

25   it's in his medical records, such that I can get that

Daniel Lincoln                    November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 50

1    for you.

2        Q    Does Spine Center Atlanta use the same vendor

3    to purchase all of their stimulator implants?

4        A    No.  No there are -- I believe, depending on

5    the patient situation, there are a couple of choices or

6    a few choices that they have for a device that would be

7    appropriate to the situation of that patient.  So they

8    would choose the most appropriate device for this

9    patient.  But I can certainly tell you which ones that

10   are the preferred device for a particular patient

11   pathology.

12       Q    So my understanding, from, I believe, looking

13   at the surgical narrative for Mr. Lowe maybe, is that

14   his model was a Medtronics.  Are you familiar with that

15   brand?

16       A    Yes.

17       Q    Does Spine Center purchase more than one

18   Medtronics stimulator?

19       A    To my knowledge, yes.

20       Q    Okay.  Do you know the price or the amount

21   that Spine Center pays to purchase those Medtronics

22   stimulators from vendors?

23       A    No, not off the top of my head.

24       Q    And from looking at the bill earlier, there

25   wasn't a separate line item entry for the price of the

Daniel Lincoln                                    November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 51

1    actual equipment.  Does Spine Center, I guess, include

2    or factor in equipment prices when they're charging for

3    the facility fee for that procedure?

4        A    It's my understanding that is itemized in that

5    regard.  So it should be itemized, and those amounts

6    should be there.  Where I would go to look at that would

7    be on the tickets and in the data that comes into the

8    billing, and then ascertain if what is in the clinical

9    care record, or the patient record, reflects correctly

10   what's in the financial bill section.

11            And typically, I'm not working in the clinical

12   side; I would look on the bill.  Sometimes, in these

13   situations when I'm evaluating data, I will get some

14   reports or I will go and look at specific things to see

15   if they've been implemented correctly on the financial

16   side.  But that's the process that would go through to

17   ensure to see what has occurred.

18       Q    So a question I have is, or what I was trying

19   to get at, if you look at the patient ledger for

20   Mr. Lowe, which we were looking at earlier -- I can

21   bring it back up just so we're not guessing here.

22            So if you're looking at his procedure from

23   August 3rd of 2020 where the stimulator was installed,

24   there's not a separate line item on this bill for, I

25   guess, purchasing the actual hardware.  Correct?

Daniel Lincoln                          November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 52

```
 1        A    So you mean a line item for what we paid or

 2   what we brought in?

 3        Q    Or even -- let me ask the question this way:

 4             Looking at this bill, I don't see a line item

 5   where you charged him separately.  You charged Mr. Lowe

 6   to purchase the equipment; true?

 7        A    I'm sorry; I'm not sure I understand the

 8   question.  You mean that there would be a line item

 9   specifically for the spinal cord stimulator or the

10   pieces thereof?

11        Q    Let me ask it again.  I'm with you; I'm trying

12   to drill down into a way where you can understand me.

13             Where, on this bill, is the actual price of

14   the hardware factored into the charges issued to

15   Mr. Lowe is my question.

16        A    Okay.  And I would have to speculate to answer

17   that, just in terms of what I believe to be true and

18   then confirm it.  But I believe it is in the

19   installation, or where it says implantation is where I

20   was say that that device is then included.

21        Q    So -- and you're not positive.  But it's, you

22   know -- from looking at this, you believe that it's

23   essentially built into the facility fee charge for

24   implanting the device?

25        A    That is what I would confirm.  I would also
```

Daniel Lincoln                        November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 53

1    then confirm that, from the clinical record, that it's

2    been correctly implemented in the patient ledger as

3    well.  So -- and that's -- yes, that's what I would do.

4         Q    Okay.  So as we sit here today, you don't know

5    how much it costs Spine Center to procure that

6    stimulator that was installed in Mr. Lowe's back in

7    August of 2020?

8         A    I don't have specific price knowledge in that

9    regard.

10        Q    And you also don't know which vendor that

11   specific stimulator was purchased from?

12        A    Not off the top of my head, but certainly data

13   that we can ascertain.

14        Q    All right.  The last topic I want to discuss

15   is Topic 10, which was Spine Center Atlanta's document

16   production in this case.  But more narrowly, I wanted to

17   discuss -- last time we talked, you were unsure who at

18   Spine Center Atlanta had drafted the medical narratives

19   signed by Dr. Chappuis and Dr. Adams.

20        A    Uh-huh.

21        Q    Do you now know who drafted those two

22   narratives?

23        A    Yes, I do.

24        Q    And who was that?

25        A    That was -- GiGi drafted both of them; one for

1   Dr. Adams, that he read and sign and what was submitted.

2   And one for Dr. Chappuis that he reviewed and signed.

3   She's the medical assistant and has access to this data

4   and would typically -- that's our procedure.  Typically,

5   that is the way these documents are produced on a

6   regular basis when requested.

7       Q    And what exactly is or was Gigi's job title at

8   the time these narratives were drafted?

9       A    One second, and I will --

10      (There was a brief pause in the proceedings.)

11          THE WITNESS:  I was -- sorry; I was looking

12      for an e-mail specifically to correctly give you

13      her job title.  But she's one of the medical

14      assistants that worked the clinic and work with the

15      patients together with the physicians.  She was one

16      of the senior staff.

17          MR. SESSIONS:  Okay.

18  BY MR. SESSIONS:

19      Q    When you say "medical assistant" -- so is Gigi

20  like a nurse or a doctor?

21      A    I believe nurse practitioner.

22          MR. SESSIONS:  All right, Mr. Lincoln.  Absent

23      those questions that remain unanswered, that's all

24      I have for you today.

25          THE WITNESS:  Okay.  So I have 2019 and 2020

Daniel Lincoln                     November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 55

1      number of spinal stims that were implanted.  And

2      then how many patients were billed in 2019 and

3      2020, if we can ascertain how many were billed with

4      the CPT code 63650 and 63685.  And then, of those

5      that were billed who has paid, and of that, can we

6      categorize them by self-pay, LOP, or some other

7      health insurance or type of payment.

8          MR. SESSIONS:  Yes, and the average amount

9      accepted for those --

10         THE WITNESS:  Right.

11         (Speaking simultaneously.)

12         MR. SESSIONS:  And then, additionally, the

13     make and model of the stimulator provided to

14     Mr. Lowe and how much it costs Spine Center and who

15     the vendor was.

16         THE WITNESS:  Yep.  All right, so noted.

17         VIDEOGRAPHER:  Counsel, do you have any other

18     questions?

19         MR. SESSIONS:  I do not.

20             (Speaking simultaneously).

21         MR. SESSIONS:  Mr. McEvoy might.

22         I'm sorry, Sean.

23         MR. MCEVOY:  Yeah, I do.

24         Mr. Lincoln, this will be a little bit

25     repetitive just because of the nature of the way

1      things work here.

2                      EXAMINATION

3   BY MR. MCEVOY:

4      Q    If you could, would you introduce yourself to

5   the jury.

6      A    Certainly.  My name is Daniel Lincoln, and I

7   work at the practice of Spine Center Atlanta.

8      Q    What is your position there?

9      A    I work in practice management, so the

10  management of the practice on the business side.

11     Q    And you're here today testifying as a

12  corporate representative of that company?

13     A    That is correct.

14     Q    And it's my understanding that you're familiar

15  with the billing as it relates to the medical treatment

16  provided to Mr. Lowe by Spine Center Atlanta, including

17  Dr. Chappuis and Dr. Adams and others?

18     A    Yes, I am.

19     Q    I'm going to show you what's been marked as

20  Plaintiff's Exhibit 1.  This is a certified copy of the

21  billing ledger for Mr. Lowe; correct?

22     A    Correct.

23     Q    And explain to the jury what these codes are.

24     A    So the CPT codes are the five digit numbers,

25  and the other numbers are -- with the points in them --

Daniel Lincoln                    November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 57

1    can be a diagnosis.  And those are the treatment that

2    then represents the charges for the treatment that

3    Mr. Lowe received.

4        Q    And can you explain to the jury what a CPT

5    code is in practice.

6        A    CPT code is something that's defined by the

7    government as a procedure that is done in a particular

8    category.  It could be cardiac, it could be neuro, could

9    be ortho.  But in a particular category such that, on a

10   general basis or on a basis, it's a standard where

11   everybody uses the same code to define what kind of

12   treatment that patient was given.

13            And then there's an amount -- dollar amount

14   associated with that CPT code that hospitals and

15   insurances use to set prices and to perform billing and

16   reimbursement for that care.

17       Q    Does Spine Center Atlanta assign a price to

18   each of its CPT codes it uses, with respect to treatment

19   it provides patients?

20       A    Yes, it does.

21       Q    And what is that list called?

22       A    A chargemaster.

23       Q    And is the chargemaster a price list?  Is that

24   the same for all patients, regardless of how they pay

25   their bill?

Daniel Lincoln                    November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 58

1      A    That is correct.

2      Q    And are the charges maintained by Spine Center

3    Atlanta and set forth in this bill that we've marked as

4    Plaintiff's Exhibit 1?  Are they within the range of

5    reasonable and customary charges for these types of

6    services?

7      A    Yes, they are.

8      Q    And the present case, this bill for services

9    rendered to Mr. Lowe -- it looks like the bill total is

10    $203,029.56.  Is that true?

11      A    That is correct.

12      Q    And Dr. Adams testified in this case that

13    Mr. Lowe is, more likely than not, going to need to have

14    his spine stimulator replaced numerous times.  I think

15    he said four times.

16          But if we were to look at this bill in order

17    to figure out how much the spine simulator cost, it's my

18    understanding that we take this date of service,

19    8/3/2020, and we add up all these charges on the right

20    hand column for that to get the total amount it costs

21    for the spine stimulator.

22      A    There are many factors that come in, as we've

23    said, and you can look at that total correct --

24      Q    Yeah, so --

25      A    -- and individual pieces.

Daniel Lincoln                                November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 59

1        Q     Right.  So basically, we add the $39,099.45 to

2    the next surgery center charge of $55,130.22, plus the

3    anesthesia of $630.  And we just have to add those three

4    items together?

5        A     Yes.

6        Q     And I did that; I came up to $94,859.67.

7              Is that within the range of reasonable and

8    customary charges of the implantation of the spinal

9    stimulator such as this?

10       A     Depending on his pathology or the situation at

11   hand, but the individual charges certainly are.  So I

12   would, from that, deduce that to be true.

13       Q     Okay, and so this is a reliable number we can

14   use as a multiplier.  Not accounting for any kind of

15   inflation -- medical inflation, but as a starting point

16   as to what the future cost of a spinal implantation

17   would be with respect to Mr. Lowe; true?

18       A     At least that, yes.

19       Q     Okay.  Has any local or state or county

20   governmental entity ever required your practice to

21   change the amount of bills for any type of service?

22       A     No.

23       Q     Has the federal government ever stepped in and

24   done that?

25       A     No.

Daniel Lincoln                    November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 60

```
 1        Q     Has the American Medical Association or any

 2   other medical association stepped in and required you to

 3   change the amount that you bill for your services?

 4        A     No.

 5        Q     There's a reference out there that some folks

 6   use -- Wasserman's, or something like that -- regarding

 7   bills charged.  Are you familiar with that book?

 8        A     I have heard of that book, yes.

 9        Q     Has anyone from that organization come to your

10   practice and told y'all that your billing is in some way

11   not reasonable or customary?

12        A     No, not to my knowledge.  I -- no.

13        Q     And no organizations like the Better Business

14   Bureau or similar things in the medical industry -- no

15   one's ever come to you and told you that your bills were

16   unreasonable or out of the ordinary?

17        A     No, nobody comes to us.  We will consult

18   certain entities as we're setting our chargemaster to

19   ensure that we're in a usual and customary arena for the

20   type of service we're providing.  But nobody's come to

21   as.

22        Q     Okay.

23        A     Or required us to do anything of that sort.

24        Q     And the amount charged to Mr. Lowe in this

25   case for the medical services provided to him -- is this
```

Daniel Lincoln                                    November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 61

1    amount a fair value charged to him for those services,

2    the 203,029.56?

3         A    For the experience level and the type of

4    practice that we are and the care that we provide our

5    patients, I believe that to be the case.  Yes.

6              MR. MCEVOY:  That's all I have.  Thank you,

7         sir.  That's all I have for you.

8              MR. SESSIONS:  Nothing further for me.

9              VIDEOGRAPHER:  This concludes the deposition.

10        The time is 12:08 p.m., and we are now off the

11        video record.

12             (Deposition concluded at 12:08 p.m.)

13                  (Signature reserved.)

14

15

16

17

18

19

20

21

22

23

24

25

Daniel Lincoln                                    November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 62

1              E R R A T A   S H E E T

2              I do hereby certify that I have read all

3    questions propounded to me and all answers given by me

4    on the 15th day of November 2021, taken before

5    Angela A. Sanders, Certified Court Reporter, and that:

6              1) There are no changes noted.

7              2) The following changes are noted:

8              Pursuant to Rule 30(e) of the Federal Rules of

9    Civil Procedure and/or the Official Code of Georgia

10   Annotated 9-11-30(e), both of which read in part:  Any

11   changes in the form or substance which you desire to

12   make shall be entered upon the deposition...with a

13   statement of the reasons given...for making them.

14   Accordingly, to assist you in effecting corrections,

15   please use the form below:

16              Page No.  Line No.  should read:

17   _____

18              And the reason for the change is:

19   _____

20              Page No.  Line No.  should read:

21   _____

22              And the reason for the change is:

23   _____

24              Page No.  Line No.  should read:

25   _____

Daniel Lincoln                          November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 63

1          And the reason for the change is:

2    _____

3          Page No.  Line No.  should read:

4    _____

5          And the reason for the change is:

6    _____

7          Page No.  Line No.  should read:

8    _____

9          And the reason for the change is:

10   _____

11         Page No.  Line No.  should read:

12   _____

13         And the reason for the change is:

14   _____

15         If supplemental or additional pages are

16   necessary, please furnish same in typewriting annexed to

17   the interview.

18                    _____

19                                   DANIEL LINCOLN

20

21         Sworn to and subscribed before me, this the

22         day of            2021 .

     Day              Month     Year

23

24                    _____

25                                   Notary Public

Daniel Lincoln                          November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 64

1                    D I S C L O S U R E

2     STATE OF GEORGIA

      COUNTY OF WALTON

3

4              Pursuant to Article 10.B of the rules and

5     regulations of the Board of Court Reporting of the

6     Judicial Council of Georgia, I make the following

7     disclosure:

8              I am a Georgia Certified Court Reporter.  I am

9     here as an independent contractor for Veritext Legal

10    Solutions.  Veritext Legal Solutions was contacted by

11    McMikle, Kurey & Branch, LLP, to provide court reporting

12    services for this deposition.  Veritext Legal Solutions

13    will not be taking this deposition under any contract

14    that is prohibited by O.C.G.A. 15-14-37(a) and (b).

15    Veritext Legal Solutions has no contract/agreement to

16    provide court reporting services with any party to the

17    case, any counsel in the case, or any reporter or

18    reporting agency from whom a referral might have been

19    made to cover this deposition.

20

21

22

23                    (Continued on next page.)

24

25

Veritext Legal Solutions
800.808.4958                                      770.343.9696

Daniel Lincoln                                    November 15, 2021
Lowe, Steven v. Difei Transport LLC

                                                        Page 65

1         Veritext Legal Solutions will charge its usual

2    and customary rates to all parties in the case, and a

3    financial discount will not be given to any party to

4    this litigation.

5

6         Th:

7

8                              Angela A. Sanders

9                              ANGELA A. SANDERS

10                         Certified Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Daniel Lincoln                         November 15, 2021
Lowe, Steven v. Difei Transport LLC

Page 66

```
 1                  C E R T I F I C A T E

 2    STATE OF GEORGIA

      COUNTY OF WALTON

 3

 4          I hereby certify that the foregoing transcript

 5    was taken down and recorded by me, as stated in the

 6    caption; the colloquies, statements, questions, and

 7    answers thereto were reduced to typewriting under my

 8    direction and supervision; and the transcript is a true

 9    and correct record of the testimony/evidence given, to

10    the best of my ability.

11          I further certify that I am not a relative or

12    employee or attorney or counsel of any of the parties,

13    nor am I a relative or employee of such attorney or

14    counsel, nor am I financially interested in the action.

15

16          This,

17

18                          Angela A. Sanders

19                          ANGELA A. SANDERS

20                          Certified Court Reporter

21

22

23

24

25
```

Georgia Code

Title 9, Chapter 11

Article 5, Section 9-11-30

(e) Review by witness; changes; signing.

If requested by the deponent or a party before completion of the deposition, the deponent shall have 30 days after being notified by the officer that the transcript or recording is available in which to review the transcript or recording and, if there are changes in form or substance, to sign a statement reciting such changes and the reasons given by the deponent for making them. The officer shall indicate in the certificate prescribed by paragraph (1) of subsection (f) of this Code section whether any review was requested and, if so, shall append any changes made by the deponent during the period allowed. If the deposition is not reviewed and signed by the witness within 30 days of its submission to him or her, the officer shall sign it and state on the record that the deposition was not reviewed and signed by the deponent within 30 days. The deposition may then be used as fully as though signed unless, on a motion to suppress under paragraph (4) of subsection (d) of Code

Section 9-11-32, the court holds that the reasons
given for the refusal to sign require rejection of
the deposition in whole or in part.

DISCLAIMER:  THE FOREGOING CIVIL PROCEDURE RULES
ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.
THE ABOVE RULES ARE CURRENT AS OF APRIL 1,
2019.  PLEASE REFER TO THE APPLICABLE STATE RULES
OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.

## RECORDS CUSTODIAN'S AFFIDAVIT AND DECLARATION

I, the undersigned, hereby certify that I am a duly authorized custodian of records for **Spine Center Atlanta - Corporate**, and I have authority to certify said records and copies thereof. Further, I hereby certify that the copies of records attached hereto are true and accurate copies of the records of **Steven M. Lowe**, and comprise <u>ALL</u> records and notes on **Steven M. Lowe** for <u>ALL</u> dates of treatment for <u>ALL</u> injuries, illnesses, incidents, or accidents which **Steven M. Lowe** received treatment at this facility.

I hereby certify in compliance with O.C.G.A. §§ 24-8-803(6) and 24-9-902(11) that these records:

a) Were made at or near the time of the described acts, events, conditions, opinions, or diagnoses set forth by or from information transmitted by a person with knowledge of such matters;

b) Were kept in the course of your regularly conducted business activity;

c) Were made as the regular practice of your regularly conducted business activity; and

d) Were made by or from information transmitted by a person with personal knowledge and a business duty to report.

This _2nd_ day of _November_, 20 _20_

_____
Records Custodian

_Nalesha Fulford_
PRINT NAME

Sworn to and subscribed before me this
_2nd_ day of _November_, 20 _20_

_____
(NOTARY PUBLIC)

My Commission Expires:
_7-15-22_

JENNIFER BUONGIORNE
MY COMMISSION EXPIRES
NOTARY
PUBLIC
JULY 15, 2022
DOUGLAS COUNTY, GEORGIA

**EXHIBIT**
1

# Patient Ledger

| Patient ID: | | Steven Lowe | | Total Charges: | | $203,029.56 |
|---|---|---|---|---|---|---|
| Birthdate: | | 525 Lake Court Drive | | Total Payments: | | $0.00 |
| Phone 1: | | Mcdonough GA  30523 | | Total Adjustments: | | $0.00 |
| Phone 2: | | | | Insurance Balance: | | $203,029.56 |
| | | | | Patient Balance: | | $0.00 |

| Visit | Company | | Provider | Facility | Ticket Number | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Service | Code | Description | | | | Units | Fee | Insurance | Patient |
| 07/02/2019 | SpineCenterAtlanta South | | Forte NP-C, Sharonda | SCA South - Stockbridge | 278705 | | | | |
| | M48.04 | Spinal stenosis, thoracic region | | | | | | | |
| | M53.82 | Other specified dorsopathies, cervical region | | | | | | | |
| 07/02/2019 | 99203 | Detailed | | | | 1.00 | $600.00 | $600.00 | $0.00 |
| | | | | Visit Total/Balance Due | | | | *$600.00* | *$0.00* |
| 07/16/2019 | SpineCenterAtlanta South | | Patnubay ATC, Gilbert | SCA South – Forest Park | 280720 | | | | |
| | M54.2 | Cervicalgia | | | | | | | |
| | M54.5 | Low back pain | | | | | | | |
| | S13.4XXA | Sprain of ligaments of cervical spine, initial encounter | | | | | | | |
| | S33.5XXA | Sprain of ligaments of lumbar spine, initial encounter | | | | | | | |
| 07/16/2019 | 97162 | Physical therapy evaluation; moderate complexity, requiring these components: A history of present problem with 1-2 personal factors and/or comorbidities that impact the plan of care; An examination of body systems using standardized tests and measures in | | | | 1.00 | $225.00 | $225.00 | $0.00 |
| 07/16/2019 | 97110 | Therapeutic exercise 15min | | | | 2.00 | $200.20 | $200.20 | $0.00 |
| | | | | Visit Total/Balance Due | | | | *$425.20* | *$0.00* |
| 07/16/2019 | SpineCenterAtlanta South | | Jones DPT,  Constance | SCA South - Forest Park | 280730 | | | | |
| | M54.2 | Cervicalgia | | | | | | | |
| | M54.5 | Low back pain | | | | | | | |
| 07/16/2019 | 97124 | Massage Therapy 15 min | | | | 4.00 | $252.40 | $252.40 | $0.00 |
| | | | | Visit Total/Balance Due | | | | *$252.40* | *$0.00* |
| 07/26/2019 | SpineCenterAtlanta South | | Coleman CMT, Sheldon | SCA South - Forest Park | 282316 | | | | |
| | M54.2 | Cervicalgia | | | | | | | |
| | M54.5 | Low back pain | | | | | | | |
| 07/26/2019 | 97124 | Massage Therapy 15 min | | | | 4.00 | $235.72 | $235.72 | $0.00 |
| | | | | Visit Total/Balance Due | | | | *$235.72* | *$0.00* |
| 08/09/2019 | SpineCenterAtlanta South | | Coleman CMT, Sheldon | SCA South - Forest Park | 284329 | | | | |
| | M54.2 | Cervicalgia | | | | | | | |
| | M54.5 | Low back pain | | | | | | | |
| 08/09/2019 | 97124 | Massage Therapy 15 min | | | | 4.00 | $235.72 | $235.72 | $0.00 |
| | | | | Visit Total/Balance Due | | | | *$235.72* | *$0.00* |
| 08/09/2019 | SpineCenterAtlanta South | | Patnubay ATC, Gilbert | SCA South - Forest Park | 284336 | | | | |
| | M54.2 | Cervicalgia | | | | | | | |
| | M54.5 | Low back pain | | | | | | | |
| 08/09/2019 | 97110 | Therapeutic exercise 15min | | | | 2.00 | $200.20 | $200.20 | $0.00 |
| | | | | Visit Total/Balance Due | | | | *$200.20* | *$0.00* |
| 08/30/2019 | SpineCenterAtlanta South | | Forte NP-C, Sharonda | SCA South - Forest Park | 287166 | | | | |
| | M54.5 | Low back pain | | | | | | | |
| | M48.02 | Spinal stenosis, cervical region | | | | | | | |
| 08/30/2019 | 99214 | Detailed Office Visit 25 min | | | | 1.00 | $650.00 | $650.00 | $0.00 |
| | | | | Visit Total/Balance Due | | | | *$650.00* | *$0.00* |
| 08/30/2019 | SpineCenterAtlanta South | | Coleman CMT, Sheldon | SCA South - Forest Park | 287274 | | | | |
| | M54.2 | Cervicalgia | | | | | | | |
| | M54.5 | Low back pain | | | | | | | |
| 08/30/2019 | 97124 | Massage Therapy 15 min | | | | 4.00 | $235.72 | $235.72 | $0.00 |
| | | | | Visit Total/Balance Due | | | | *$235.72* | *$0.00* |
| 08/30/2019 | SpineCenterAtlanta South | | Patnubay ATC, Gilbert | SCA South - Forest Park | 287285 | | | | |

| Patient ID: | Steven Lowe | Total Charges: | $203,029.56 |
| Birthdate: | 525 Lake Court Drive | Total Payments: | $0.00 |
| Phone 1: | Mcdonough GA  30523 | Total Adjustments: | $0.00 |
| Phone 2: | | Insurance Balance: | $203,029.56 |
| | | Patient Balance: | $0.00 |

| Visit | Company | | Provider | Facility | Ticket Number | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Service | Code | Description | | | | Units | Fee | Insurance | Patient |
| | M54.2 | Cervicalgia | | | | | | | |
| | M54.5 | Low back pain | | | | | | | |
| 08/30/2019 | 97110 | Therapeutic exercise 15min | | | | 2.00 | $200.20 | $200.20 | $0.00 |
| | | | | Visit Total/Balance Due | | | | $200.20 | $0.00 |
| 09/06/2019 | SpineCenterAtlanta South | | Forte NP-C, Sharonda | SCA South - Forest Park | 288006 | | | | |
| | | | | Visit Total/Balance Due | | | | | $0.00 |
| 10/28/2019 | Atlanta Orthopaedic Surg Center | | Adams MD, Brian D | Atlanta Orthopaedic Surgery Center | 294755 | | | | |
| | M25.51 | Pain in shoulder | | | | | | | |
| 10/28/2019 | 20610 | Major Joint | | | | 1.00 | $509.32 | $509.32 | $0.00 |
| | | | | Visit Total/Balance Due | | | | $509.32 | $0.00 |
| 10/28/2019 | Atlanta Orthopaedic Surg Center | | Adams MD, Brian D | Atlanta Orthopaedic Surgery Center | 295680 | | | | |
| | M25.51 | Pain in shoulder | | | | | | | |
| 10/28/2019 | 20610 | Major Joint | | | | 1.00 | $509.32 | $509.32 | $0.00 |
| | | | | Visit Total/Balance Due | | | | $509.32 | $0.00 |
| 11/12/2019 | SpineCenterAtlanta South | | Forte NP-C, Sharonda | SCA South - Forest Park | 296354 | | | | |
| | M48.04 | Spinal stenosis, thoracic region | | | | | | | |
| | M48.02 | Spinal stenosis, cervical region | | | | | | | |
| | M50.30 | Other cervical disc degeneration, unspecified cervical region | | | | | | | |
| 11/12/2019 | 99214 | Detailed Office Visit 25 min | | | | 1.00 | $650.00 | $650.00 | $0.00 |
| | | | | Visit Total/Balance Due | | | | $650.00 | $0.00 |
| 12/04/2019 | Orthopaedic & Spine Surgery of Atlant | | Adams MD, Brian D | Atlanta Orthopaedic Surgery Center | 298435 | | | | |
| | M47.817 | Spondylosis without myelopathy or radiculopathy, lumbosacral region | | | | | | | |
| 12/04/2019 | 64493 | INJECTION(S), DIAGNOSTIC OR THERAPEUTIC AGENT, PARAVERTEBRAL FACET (ZYGAPOPHYSEAL) JOINT (OR NERVES INNERVATING THAT JOINT) WITH IMAGE GUIDANCE (FLUOROSCOPY OR CT), LUMBAR OR SACRAL; SINGLE LEVEL | | | | 1.00 | $3,112.77 | $3,112.77 | $0.00 |
| 12/04/2019 | 64494 | INJECTION(S), DIAGNOSTIC OR THERAPEUTIC AGENT, PARAVERTEBRAL FACET (ZYGAPOPHYSEAL) JOINT (OR NERVES INNERVATING THAT JOINT) WITH IMAGE GUIDANCE (FLUOROSCOPY OR CT), LUMBAR OR SACRAL; SECOND LEVEL (LIST SEPARATELY IN ADDITION TO CODE FOR PRIMARY PROCEDURE | | | | 1.00 | $1,473.15 | $1,473.15 | $0.00 |
| | | | | Visit Total/Balance Due | | | | $4,585.92 | $0.00 |
| 12/04/2019 | Atlanta Orthopaedic Surg Center | | Adams MD, Brian D | Atlanta Orthopaedic Surgery Center | 300683 | | | | |
| | M47.817 | Spondylosis without myelopathy or radiculopathy, lumbosacral region | | | | | | | |
| 12/04/2019 | 64493 | INJECTION(S), DIAGNOSTIC OR THERAPEUTIC AGENT, PARAVERTEBRAL FACET (ZYGAPOPHYSEAL) JOINT (OR NERVES INNERVATING THAT JOINT) WITH IMAGE GUIDANCE (FLUOROSCOPY OR CT), LUMBAR OR SACRAL; SINGLE LEVEL | | | | 1.00 | $4,389.01 | $4,389.01 | $0.00 |
| 12/04/2019 | 64494 | INJECTION(S), DIAGNOSTIC OR THERAPEUTIC AGENT, PARAVERTEBRAL FACET (ZYGAPOPHYSEAL) JOINT (OR NERVES INNERVATING THAT JOINT) WITH IMAGE GUIDANCE (FLUOROSCOPY OR CT), LUMBAR OR SACRAL; SECOND LEVEL (LIST SEPARATELY IN ADDITION TO CODE FOR PRIMARY PROCEDURE | | | | 1.00 | $2,077.14 | $2,077.14 | $0.00 |
| | | | | Visit Total/Balance Due | | | | $6,466.15 | $0.00 |
| 12/04/2019 | Orthopaedic & Spine Surgery of Atlant | | Pham MD, Ngan | Atlanta Orthopaedic Surgery Center | 300684 | | | | |
| | M47.817 | Spondylosis without myelopathy or radiculopathy, lumbosacral region | | | | | | | |
| 12/04/2019 | 01992 | Anesthesia for diagnostic or therapeutic nerve blocks and injections (when block or injection is performed by a different provider); prone position | | | | 1.00 | $630.00 | $630.00 | $0.00 |
| | | | | Visit Total/Balance Due | | | | $630.00 | $0.00 |
| 12/09/2019 | SpineCenterAtlanta South | | Forte NP-C, Sharonda | SCA South - Forest Park | 300024 | | | | |
| 12/09/2019 | MISSAPPT | Missed Appointment Fee | | | | 1.00 | $30.00 | $30.00 | $0.00 |
| | | | | Visit Total/Balance Due | | | | $30.00 | $0.00 |
| 12/16/2019 | SpineCenterAtlanta South | | Forte NP-C, Sharonda | SCA South - Forest Park | 301344 | | | | |
| | M51.36 | Other intervertebral disc degeneration, lumbar region | | | | | | | |
| | M62.40 | Contracture of muscle, unspecified site | | | | | | | |

| Patient ID: | | | Total Charges: | $203,029.56 |
|---|---|---|---|---|
| Birthdate: | Steven Lowe | | Total Payments: | $0.00 |
| Phone 1: | 525 Lake Court Drive | | Total Adjustments: | $0.00 |
| Phone 2: | Mcdonough GA  30523 | | Insurance Balance: | $203,029.56 |
| | | | Patient Balance: | $0.00 |

| Visit | Company | | Provider | Facility | Ticket Number | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Service | Code | Description | | | | Units | Fee | Insurance | Patient |
| | M50.30 | Other cervical disc degeneration, unspecified cervical region | | | | | | | |
| | M54.2 | Cervicalgia | | | | | | | |
| 12/16/2019 | 99214 | Detailed Office Visit 25 min | | | | 1.00 | $650.00 | $650.00 | $0.00 |
| | | | | Visit Total/Balance Due | | | | $650.00 | $0.00 |
| 01/06/2020 | Orthopaedic & Spine Surgery of Atlant | Adams MD, Brian D | | Atlanta Orthopaedic Surgery Center | 303267 | | | | |
| | M47.817 | Spondylosis without myelopathy or radiculopathy, lumbosacral region | | | | | | | |
| 01/06/2020 | 64635 | RFA Lumbar/Sacral Facet | | | | 1.00 | $4,340.03 | $4,340.03 | $0.00 |
| 01/06/2020 | 64636 | RFA Lumbar/Sacral ADDL Facet Joint | | | | 1.00 | $1,982.34 | $1,982.34 | $0.00 |
| | | | | Visit Total/Balance Due | | | | $6,322.37 | $0.00 |
| 01/06/2020 | Atlanta Orthopaedic Surg Center | Adams MD, Brian D | | Atlanta Orthopaedic Surgery Center | 303882 | | | | |
| | M47.817 | Spondylosis without myelopathy or radiculopathy, lumbosacral region | | | | | | | |
| 01/06/2020 | 64635 | RFA Lumbar/Sacral Facet | | | | 1.00 | $6,119.44 | $6,119.44 | $0.00 |
| 01/06/2020 | 64636 | RFA Lumbar/Sacral ADDL Facet Joint | | | | 1.00 | $2,795.10 | $2,795.10 | $0.00 |
| | | | | Visit Total/Balance Due | | | | $8,914.54 | $0.00 |
| 01/06/2020 | Orthopaedic & Spine Surgery of Atlant | Pham MD, Ngan | | Atlanta Orthopaedic Surgery Center | 303883 | | | | |
| | M47.817 | Spondylosis without myelopathy or radiculopathy, lumbosacral region | | | | | | | |
| 01/06/2020 | 01992 | Anesthesia for diagnostic or therapeutic nerve blocks and injections (when block or injection is performed by a different provider); prone position | | | | 1.00 | $630.00 | $630.00 | $0.00 |
| | | | | Visit Total/Balance Due | | | | $630.00 | $0.00 |
| 01/22/2020 | Orthopaedic & Spine Surgery of Atlant | Adams MD, Brian D | | Atlanta Orthopaedic Surgery Center | 304168 | | | | |
| | M54.12 | Radiculopathy, cervical region | | | | | | | |
| 01/22/2020 | 64483 | Injection, anesthetic agent and/or steroid, transforaminal epidural; lumbar or sacral, single level | | | | 1.00 | $3,272.70 | $3,272.70 | $0.00 |
| | | | | Visit Total/Balance Due | | | | $3,272.70 | $0.00 |
| 01/22/2020 | Atlanta Orthopaedic Surg Center | Adams MD, Brian D | | Atlanta Orthopaedic Surgery Center | 306847 | | | | |
| | M54.12 | Radiculopathy, cervical region | | | | | | | |
| 01/22/2020 | 62321 | Injection(s), of diagnostic or therapeutic substance(s) (eg, anesthetic, antispasmodic, opioid, steroid, other solution), not including neurolytic substances, including needle or catheter placement, interlaminar epidural or subarachnoid, cervical or thora | | | | 1.00 | $3,483.90 | $3,483.90 | $0.00 |
| | | | | Visit Total/Balance Due | | | | $3,483.90 | $0.00 |
| 01/28/2020 | Orthopaedic & Spine Surgery of Atlant | Pham MD, Ngan | | Atlanta Orthopaedic Surgery Center | 306848 | | | | |
| | M54.12 | Radiculopathy, cervical region | | | | | | | |
| 01/22/2020 | 01992 | Anesthesia for diagnostic or therapeutic nerve blocks and injections (when block or injection is performed by a different provider); prone position | | | | 1.00 | $630.00 | $630.00 | $0.00 |
| | | | | Visit Total/Balance Due | | | | $630.00 | $0.00 |
| 01/28/2020 | Orthopaedic & Spine Surgery of Atlant | Pham MD, Ngan | | Atlanta Orthopaedic Surgery Center | 306849 | | | | |
| | M54.12 | Radiculopathy, cervical region | | | | | | | |
| 01/22/2020 | 01992 | Anesthesia for diagnostic or therapeutic nerve blocks and injections (when block or injection is performed by a different provider); prone position | | | | 1.00 | $630.00 | $630.00 | $0.00 |
| | | | | Visit Total/Balance Due | | | | $630.00 | $0.00 |
| 01/28/2020 | Atlanta Orthopaedic Surg Center | Adams MD, Brian D | | Atlanta Orthopaedic Surgery Center | 306850 | | | | |
| | M54.12 | Radiculopathy, cervical region | | | | | | | |
| 01/22/2020 | 62321 | Injection(s), of diagnostic or therapeutic substance(s) (eg, anesthetic, antispasmodic, opioid, steroid, other solution), not including neurolytic substances, including needle or catheter placement, interlaminar epidural or subarachnoid, cervical or thora | | | | 1.00 | $3,483.90 | $3,483.90 | $0.00 |
| | | | | Visit Total/Balance Due | | | | $3,483.90 | $0.00 |
| 01/22/2020 | Orthopaedic & Spine Surgery of Atlant | Adams MD, Brian D | | Atlanta Orthopaedic Surgery Center | 306851 | | | | |
| | M54.12 | Radiculopathy, cervical region | | | | | | | |
| 01/22/2020 | 62321 | Injection(s), of diagnostic or therapeutic substance(s) (eg, anesthetic, antispasmodic, opioid, steroid, other solution), not including neurolytic substances, including needle or catheter placement, interlaminar epidural or subarachnoid, cervical or thora | | | | 1.00 | $2,470.85 | $2,470.85 | $0.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Patient ID: | | Steven Lowe | | Total Charges: | | $203,029.56 |
| Birthdate: | | 525 Lake Court Drive | | Total Payments: | | $0.00 |
| Phone 1: | | Mcdonough GA  30523 | | Total Adjustments: | | $0.00 |
| Phone 2: | | | | Insurance Balance: | | $203,029.56 |
| | | | | Patient Balance: | | $0.00 |

**Visit** | **Company** | **Provider** | **Facility** | **Ticket Number**

| Service | Code | Description | | | Units | Fee | Insurance | Patient |
|---|---|---|---|---|---|---|---|---|
| | | | Visit Total/Balance Due | | | | *$2,470.85* | *$0.00* |
| 01/27/2020 | SpineCenterAtlanta South | Forte NP-C, Sharonda | SCA South - Forest Park | 306124 | | | | |
| | M51.36 | Other intervertebral disc degeneration, lumbar region | | | | | | |
| | M48.04 | Spinal stenosis, thoracic region | | | | | | |
| | M48.08 | Spinal stenosis, sacral and sacrococcygeal region | | | | | | |
| 01/27/2020 | 99214 | Detailed Office Visit 25 min | | | 1.00 | $650.00 | $650.00 | $0.00 |
| | | | Visit Total/Balance Due | | | | *$650.00* | *$0.00* |
| 03/06/2020 | SpineCenterAtlanta South | Forte NP-C, Sharonda | SCA South - Forest Park | 311373 | | | | |
| | M62.40 | Contracture of muscle, unspecified site | | | | | | |
| | M50.30 | Other cervical disc degeneration, unspecified cervical region | | | | | | |
| 03/06/2020 | 99214 | Detailed Office Visit 25 min | | | 1.00 | $650.00 | $650.00 | $0.00 |
| | | | Visit Total/Balance Due | | | | *$650.00* | *$0.00* |
| 03/18/2020 | Orthopaedic & Spine Surgery of Atlant | Chappuis MD, FACS, James L | Orthopaedic & Spine Surgery of Atlanta | 312651 | | | | |
| | M54.5 | Low back pain | | | | | | |
| | M51.26 | Other intervertebral disc displacement, lumbar region | | | | | | |
| 03/18/2020 | 99214 | Detailed Office Visit 25 min | | | 1.00 | $650.00 | $650.00 | $0.00 |
| | | | Visit Total/Balance Due | | | | *$650.00* | *$0.00* |
| 03/23/2020 | Orthopaedic & Spine Surgery of Atlant | Adams MD, Brian D | Atlanta Orthopaedic Surgery Center | 312988 | | | | |
| | M54.15 | Radiculopathy, thoracolumbar region | | | | | | |
| 03/23/2020 | 62323 | Injection(s), of diagnostic or therapeutic substance(s) (eg, anesthetic, antispasmodic, opioid, steroid, other solution), not including neurolytic substances, including needle or catheter placement, interlaminar epidural or subarachnoid, lumbar or sacral | | | 1.00 | $2,309.82 | $2,309.82 | $0.00 |
| | | | Visit Total/Balance Due | | | | *$2,309.82* | *$0.00* |
| 03/23/2020 | Atlanta Orthopaedic Surg Center | Adams MD, Brian D | Atlanta Orthopaedic Surgery Center | 313650 | | | | |
| | M54.15 | Radiculopathy, thoracolumbar region | | | | | | |
| 03/23/2020 | 62323 | Injection(s), of diagnostic or therapeutic substance(s) (eg, anesthetic, antispasmodic, opioid, steroid, other solution), not including neurolytic substances, including needle or catheter placement, interlaminar epidural or subarachnoid, lumbar or sacral | | | 1.00 | $3,256.85 | $3,256.85 | $0.00 |
| | | | Visit Total/Balance Due | | | | *$3,256.85* | *$0.00* |
| 03/23/2020 | Orthopaedic & Spine Surgery of Atlant | Pham MD, Ngan | Atlanta Orthopaedic Surgery Center | 313651 | | | | |
| | M54.15 | Radiculopathy, thoracolumbar region | | | | | | |
| 03/23/2020 | 01992 | Anesthesia for diagnostic or therapeutic nerve blocks and injections (when block or injection is performed by a different provider); prone position | | | 1.00 | $630.00 | $630.00 | $0.00 |
| | | | Visit Total/Balance Due | | | | *$630.00* | *$0.00* |
| 04/15/2020 | Orthopaedic & Spine Surgery of Atlant | Chappuis MD, FACS, James L | Orthopaedic & Spine Surgery of Atlanta | 314117 | | | | |
| | M50.20 | Other cervical disc displacement, unspecified cervical region | | | | | | |
| 04/15/2020 | 99422 | Online digital evaluation and management service, for an established patient, for up to 7 days, cumulative time during the 7 days; 11-20 minutes | | | 1.00 | $231.74 | $231.74 | $0.00 |
| | | | Visit Total/Balance Due | | | | *$231.74* | *$0.00* |
| 05/21/2020 | Orthopaedic & Spine Surgery of Atlant | Adams MD, Brian D | Orthopaedic & Spine Surgery of Atlanta | 316545 | | | | |
| | M54.15 | Radiculopathy, thoracolumbar region | | | | | | |
| 05/21/2020 | 99214 | Detailed Office Visit 25 min | | | 1.00 | $650.00 | $650.00 | $0.00 |
| | | | Visit Total/Balance Due | | | | *$650.00* | *$0.00* |
| 06/01/2020 | Orthopaedic & Spine Surgery of Atlant | Adams MD, Brian D | Atlanta Orthopaedic Surgery Center | 317101 | | | | |
| | M54.15 | Radiculopathy, thoracolumbar region | | | | | | |
| 06/01/2020 | 63650 | Percutaneous implantation of neurostimulator electrode array | | | 1.00 | $24,919.01 | $24,919.01 | $0.00 |
| 06/01/2020 | A9150 | Nonprescription drug/Biofreeze | | | 1.00 | $25.00 | $25.00 | $0.00 |
| | | | Visit Total/Balance Due | | | | *$24,944.01* | *$0.00* |

| Patient ID: | | Steven Lowe | | | Total Charges: | | $203,029.56 |
|---|---|---|---|---|---|---|---|
| Birthdate: | | 525 Lake Court Drive | | | Total Payments: | | $0.00 |
| Phone 1: | | Mcdonough GA  30523 | | | Total Adjustments: | | $0.00 |
| Phone 2: | | | | | Insurance Balance: | | $203,029.56 |
| | | | | | Patient Balance: | | $0.00 |

| Visit Service | Company Code | Description | Provider | Facility | Ticket Number | Units | Fee | Insurance | Patient |
|---|---|---|---|---|---|---|---|---|---|
| 06/01/2020 | Atlanta Orthopaedic Surg Center | | Adams MD, Brian D | Atlanta Orthopaedic Surgery Center | 317650 | | | | |
| | M54.15 | Radiculopathy, thoracolumbar region | | | | | | | |
| 06/01/2020 | 63650 | Percutaneous implantation of neurostimulator electrode array | | | | 1.00 | $23,423.86 | $23,423.86 | $0.00 |
| 06/01/2020 | A9150 | Nonprescription drug/Biofreeze | | | | 1.00 | $25.00 | $25.00 | $0.00 |
| | | | | Visit Total/Balance Due | | | | $23,448.86 | $0.00 |
| 06/01/2020 | Orthopaedic & Spine Surgery of Atlant | | Pham MD, Ngan | Atlanta Orthopaedic Surgery Center | 317651 | | | | |
| | M54.15 | Radiculopathy, thoracolumbar region | | | | | | | |
| 06/01/2020 | 01992 | Anesthesia for diagnostic or therapeutic nerve blocks and injections (when block or injection is performed by a different provider); prone position | | | | 1.00 | $630.00 | $630.00 | $0.00 |
| | | | | Visit Total/Balance Due | | | | $630.00 | $0.00 |
| 06/09/2020 | Orthopaedic & Spine Surgery of Atlant | | Adams MD, Brian D | Orthopaedic & Spine Surgery of Atlanta | 317891 | | | | |
| | M51.26 | Other intervertebral disc displacement, lumbar region | | | | | | | |
| | M54.15 | Radiculopathy, thoracolumbar region | | | | | | | |
| 06/09/2020 | 99212 | Straightforward Office Visit 10 min | | | | 1.00 | $450.00 | $450.00 | $0.00 |
| | | | | Visit Total/Balance Due | | | | $450.00 | $0.00 |
| 08/03/2020 | Orthopaedic & Spine Surgery of Atlant | | Adams MD, Brian D | Atlanta Orthopaedic Surgery Center | 322087 | | | | |
| | M51.9 | Unspecified thoracic, thoracolumbar and lumbosacral intervertebral disc disorder | | | | | | | |
| | M54.15 | Radiculopathy, thoracolumbar region | | | | | | | |
| 08/03/2020 | 63685 | Placement of spinal neurosstim pulse generator or receiver, direct or inductive coupling | | | | 1.00 | $5,874.11 | $5,874.11 | $0.00 |
| 08/03/2020 | 63650 | Percutaneous implantation of neurostimulator electrode array | | | | 2.00 | $33,225.34 | $33,225.34 | $0.00 |
| | | | | Visit Total/Balance Due | | | | $39,099.45 | $0.00 |
| 08/03/2020 | Atlanta Orthopaedic Surg Center | | Adams MD, Brian D | Atlanta Orthopaedic Surgery Center | 323262 | | | | |
| | M51.9 | Unspecified thoracic, thoracolumbar and lumbosacral intervertebral disc disorder | | | | | | | |
| | M54.15 | Radiculopathy, thoracolumbar region | | | | | | | |
| 08/03/2020 | 63650 | Percutaneous implantation of neurostimulator electrode array | | | | 2.00 | $46,847.72 | $46,847.72 | $0.00 |
| 08/03/2020 | 63685 | Placement of spinal neurosstim pulse generator or receiver, direct or inductive coupling | | | | 1.00 | $8,282.50 | $8,282.50 | $0.00 |
| | | | | Visit Total/Balance Due | | | | $55,130.22 | $0.00 |
| 08/03/2020 | Orthopaedic & Spine Surgery of Atlant | | Pham MD, Ngan | Atlanta Orthopaedic Surgery Center | 323263 | | | | |
| | M51.9 | Unspecified thoracic, thoracolumbar and lumbosacral intervertebral disc disorder | | | | | | | |
| | M54.15 | Radiculopathy, thoracolumbar region | | | | | | | |
| 08/03/2020 | 01992 | Anesthesia for diagnostic or therapeutic nerve blocks and injections (when block or injection is performed by a different provider); prone position | | | | 1.00 | $630.00 | $630.00 | $0.00 |
| | | | | Visit Total/Balance Due | | | | $630.00 | $0.00 |
| 08/11/2020 | Orthopaedic & Spine Surgery of Atlant | | Adams MD, Brian D | Orthopaedic & Spine Surgery of Atlanta | 322787 | | | | |
| | M54.15 | Radiculopathy, thoracolumbar region | | | | | | | |
| 08/11/2020 | 99215 | Complex Office Visit 40 min | | | | 1.00 | $750.00 | $750.00 | $0.00 |
| | | | | Visit Total/Balance Due | | | | $750.00 | $0.00 |
| 08/18/2020 | Orthopaedic & Spine Surgery of Atlant | | Adams MD, Brian D | Orthopaedic & Spine Surgery of Atlanta | 323326 | | | | |
| | M51.36 | Other intervertebral disc degeneration, lumbar region | | | | | | | |
| | M54.15 | Radiculopathy, thoracolumbar region | | | | | | | |
| 08/18/2020 | 99213 | Expanded Office Visit 15 min | | | | 1.00 | $550.00 | $550.00 | $0.00 |
| | | | | Visit Total/Balance Due | | | | $550.00 | $0.00 |
| 09/15/2020 | Orthopaedic & Spine Surgery of Atlant | | Adams MD, Brian D | Orthopaedic & Spine Surgery of Atlanta | 325775 | | | | |
| | M51.26 | Other intervertebral disc displacement, lumbar region | | | | | | | |
| | M54.15 | Radiculopathy, thoracolumbar region | | | | | | | |
| 09/15/2020 | 99213 | Expanded Office Visit 15 min | | | | 1.00 | $550.00 | $550.00 | $0.00 |
| | | | | Visit Total/Balance Due | | | | $550.00 | $0.00 |
| 09/29/2020 | Orthopaedic & Spine Surgery of Atlant | | Adams MD, Brian D | Orthopaedic & Spine Surgery of Atlanta | 326977 | | | | |

| Patient ID: | | Steven Lowe | | | Total Charges: | | $203,029.56 | |
| Birthdate: | | 525 Lake Court Drive | | | Total Payments: | | $0.00 | |
| Phone 1: | | Mcdonough GA  30523 | | | Total Adjustments: | | $0.00 | |
| Phone 2: | | | | | Insurance Balance: | | $203,029.56 | |
| | | | | | Patient Balance: | | $0.00 | |

| Visit | Company | Provider | Facility | Ticket Number | | | | |
|---|---|---|---|---|---|---|---|---|
| Service | Code | Description | | | Units | Fee | Insurance | Patient |
| | M51.26 | Other intervertebral disc displacement, lumbar region | | | | | | |
| | M54.15 | Radiculopathy, thoracolumbar region | | | | | | |
| 09/29/2020 | 99213 | Expanded Office Visit 15 min | | | 1.00 | $550.00 | $550.00 | $0.00 |
| 09/29/2020 | 72100 | Radiologic examination, spine, lumbosacral; two or three views | | | 1.00 | $199.10 | $199.10 | $0.00 |
| 09/29/2020 | 72070 | X-ray Thoracic, two views | | | 1.00 | $165.38 | $165.38 | $0.00 |
| | | | Visit Total/Balance Due | | | | *$914.48* | *$0.00* |
| | | | Selected Visit Totals | | | | $203,029.56 | $0.00 |